# B'ham Ry. L. & P. Co. v. Smyer.

(Cross Appeal.)

*Bill to Restrain the Laying of Car Line in Street.*

(Decided February 6, 1913. Rehearing denied March 18, 1913. 61 South. 354.)

1. *Municipal Corporation; Streets; Use of.*—The right of the public to use the streets for travel is superior to that of an abutting owner, or any other person to use it for any other purpose, such as standing vehicles near the curbing in loading or unloading goods.

2. *Same.*—The rights of the public to pass over the street extends to every part of it, and applies to the use of new classes of vehicles as they come into use, as well as to those existing when the street was opened, except any new use which tends to destroy the street as a means of travel common to all.

3. *Same; Obstruction; Nuisance.*—Any unauthorized, permanent obstruction of a street preventing its use by the public is a nuisance which a court of equity will abate in a proper suit.

*4. Eminent Domain; Rights of Abutting Owners.*—Section 235, Constitution 1901, does not authorize an abutting owner to recover for inconveniences in loading and unloading goods at the curbing occasioned by the construction of a street railway track in the street abutting the premises.

*5. Same; Street Use; Double Track.*—The laying of a second street car track in a city street thirty-four feet wide, to afford double track facilities, is not such a use of the street as entitles the abutting owner to enjoin the laying of such track, and does not constitute such additional burden or servitude as to entitle the abutting owner to compensation, notwithstanding such laying of such track, thereby renders inconvenient such abutting owner's use of the street in loading and unloading goods at the curbing.

*6. Same.*—An injury which an abutting owner sustains on account of increased danger of collision with passing cars on account of the construction of an additional car track on the street is one suffered in common with the general public, and cannot be made the basis of a private action.

*7. Street Railways; Use of Streets; Right of Abutters.*—Where a street car company, under municipal authority constructs an additional track on a street to afford double track facilities, it is not rendered liable to an abutting owner for taxes paid by him for paving the street.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by E. J. Smyer against the Birmingham Railway Light & Power Company to enjoin the laying of double tracks in a certain street in the city of Birmingham, and for other relief. From the decree rendered, respondent appeals, and complainant takes a cross appeal. Affirmed on cross appeal, and reversed, rendered and remanded on direct appeal.

TILLMAN, BRADLEY & MORROW, and FRANK M. DOMINICK, for appellant. The word injured as used in section 235, Constitution 1901, includes only the violation of a right, or damages for the violation of a legal right. —88 Am. St. Rep. 895; 40 Am. St. Rep. 319; 61 Am. St. Rep. 770; 51 Pac. 526; 41 N. E. 817; 132 N. C. 573; 35 Atl. L. R. A. (N. S.) 1054; Lewis on Eminent Domain 365; 15 Cyc. 656; *M. & C. R. R. v. B. S. & T. R. R. Co.*, 96 Ala. 577. A street railway track is not an

additional servitude on a public highway.—*Bir. T. Co. v. B. R. & E. Co.*, 119 Ala. 137; *Baker v. Selma S. & S. Ry. Co.*, 130 Ala. 471; *Morris' Case*, 143 Ala. 246; 14 L. R. A. (N. S.) 196; Elliott on Roads & Streets, sec. 495; *Hobbs v. Long Dis. T. & T. Co.*, 147 Ala. 393. While it is conceded that complainant would have a right to a reasonable use of the street in having wagons stand there while loading and unloading, yet the private interests is subject to the general interests of the community.—*Costello v. State*, 108 Ala. 45; 1 Am. St. Rep. 840; 43 Am. Dec. 709. Complainant would have no right to have wagons and vehicles stand at right angles to the curb in loading and unloading.—9 Am. Rep. 646; 33 S. W. 592; 25 L. R. A. (N. S.) 1278; 20 S. W. 658; 30 S. W. 535; 23 Atl. 884; *Morris' Case, supra.* The injury alleged to be suffered is one common to the general public, and cannot therefore be made the basis of an action for a private wrong. Complainant was not entitled to compensation under section 227, Constitution 1901.—*Town of Eutaw v. Botnick*, 150 Ala. 429; *Enterprise L. Co. v. Porter*, 155 Ala. 426; Lewis Eminent Domain 365, and authorities supra.

E. H. DRYER, and E. J. SMYER, for appellee. The appellee is the owner to the center of the street, and the public has only an easement on it.—*Wes. Ry. v. Ala. G. T. Ry.*, 96 Ala. 280; *M. & M. Ry. Co. v. Ala. Mid.*, 116 Ala. 66. The state is not the owner, but simply a trustee charged with the administration of a trust for the general public, and the same is true of a municipality.—*State ex rel. Atty. Gen. v. L. & N.*, 158 Ala. 211; *B. & P. M. Ry. Co. v. Bir. St. Ry.*, 79 Ala. 473. The ultimate fee remaining in the abutting owner, he may redress the wrong.—*M. & M. v. Ala. Mid., supra; Perry v. N. O. M. & C.*, 55 Ala. 424; *Douglass v. City*

*of Montgomery,* 118 Ala. 599.   The grant of the right
by the city for the use of the streets for railway pur-
poses did not authorize a destruction of the use of the
street, and the grant if it went beyond the powers of
the city was unauthorized and void.—*Duy v. Ala. Wes.,*
57 South. 724; *Albes v. So. Ry.,* 164 Ala. 356; *Port of
Mobile v. L. & N.,* 84 Ala. 115; *City of Mobile v. L. &
N.,* 124 Ala. 138.   Counsel then set out the powers of
the city of Birmingham as granted by the state, and in-
sist that the powers granted did not authorize the city
to make the grant here complained of.—Authorities su-
pra, and *Costello v. State,* 108 Ala. 45; *First Nat. Bank
v. Tyson,* 138 Ala. 459; 27 A. & E. Enc. of Law, 174.
A street railway has not the right to occupy or use the
whole width of the street to the exclusion of the public
or of other vehicles, and the city has not the right to
grant it.—*H. A. & B. R. R. Co. v. B. R. & E. Co.,* 113
Ala. 239; *Bir. T. Co. v. B. R. & E. Co.,* 119 Ala. 143;
*M. J. & K. C. R. R. Co. v. Middleton,* 139 Ala. 610;
*Morris v. Montgomery T. Co.,* 143 Ala. 246.   The court,
therefore, properly granted damages although its rul-
ings as to the right to lay the track was erroneous.—
*McEachin v. City of Tuscaloosa,* 164 Ala. 263; *Bir. T.
Co. v. B. R. & E. Co., supra; Morris v. Mont. T. Co., su-
pra;* sec. 227, Constitution 1901.   If the street car com-
pany had a right to lay their tracks, it ought, in equity,
to be required to refund to appellee the amount paid
by him for paving the street.

MAYFIELD, J.—The following statement of the rec-
ord, which is practically appellee's statement of the
case made by his bill, presents the following questions
for decision on this appeal: (1) Can a person whose
property abuts on a public street in a city, which street
is 34 feet wide, is much used for general travel, has

been paved at the expense of abutting owners, and accommodates an electric street car line which is operated at grade, have injunctive relief against the street car company to prevent the construction by it of a double track on that street, notwithstanding the construction of such line is authorized by the city authorities? If not entitled to an absolute and permanent injunction, is he entitled to have the construction restrained until compensation is paid him for the injury of his property and for his aliquot part of the cost of paving the street in front of his property? These questions depend upon the answers to the following inquiries: First. Will the construction of the second car line or double track amount to a nuisance? Second. If it will not constitute a nuisance, will it be an additional servitude imposed upon the street, in excess of the use intended or designated in the act of dedication? Third. Are the plaintiff's damages, such as are shown in his bill, within the protection of section 235 of the state Constitution, which reads as follows: "Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured or destroyed by the construction or enlargement of its works, highways or improvements, which compensation shall be paid before such taking, injury or destruction. The Legislature is hereby prohibited from denying the right of appeal from any preliminary assessment of damages against any such corporation or individuals made by viewers or otherwise, but such appeal shall not deprive those who have obtained the judgment of condemnation from a right of entry, provided the amount of damages assessed shall have been paid into court in money, and a bond shall have been given in not less than double the amount

of damages assessed, with good and sufficient sureties, to pay such damages as the property owner may sustain; and the amount of damages in all cases of appeals shall on demand of either party, be determined by a jury according to law?" Fourth. If his damages are not within the protection of section 235 of the Constitution, are they within the protection of section 227 of the Constitution, which reads as follows: "Any person, firm, association or corporation, who may construct or operate any public utility along or across the public streets of any city, town or village, under any privilege or franchise permitting such construction or operation, shall be liable to abutting proprietors for the actual damages done to the abutting property on account of such construction or operation?"

The prime purpose of streets is use for travel by the public. The right of the public to the use of the street is paramount to that of an abutting owner, or to that of any individual or corporation, no matter what may be the use to which he desires to devote a part of the street. Any unauthorized permanent obstruction of the streets, which prevents the exercise of this use by the public, is a nuisance, which a court of equity, in a proper suit, will abate. There are, however, some temporary obstructions and partial occupations of the streets, by individuals or corporations, which are allowed on the ground of necessity, such as materials for building or for repairing placed thereon by abutters in such manner as to cause the least inconvenience to the public. Moreover, individuals are permitted to use a part of the street, a reasonable length of time, for the receiving and delivering of goods at their residences or business houses abutting on the streets. These private uses, however, must not be inconsistent with the reasonably free passage of travel; but necessity justifies slight

inconveniences and occasional interruptions in the free use of the whole of a street by the public.

The rule is well stated by Earl, J., in the case of *Callanan v. Gilman,* 107 N. Y. 360, 14 N. E. 264, and approved by Mr. Freeman in a note to that case as reported in 1 Am. St. Rep. 831. It is there said: "An abutting owner, engaged in building, may temporarily encroach upon the street by the deposit of building materials. A tradesman may convey goods in the street to or from his adjoining store. A coach or omnibus may stop in the street to take up or set down passengers; and the use of a street for public travel may be temporarily interfered with in a variety of other ways, without the creation of what in the law is deemed to be a nuisance. But all such interruptions and obstructions of streets must be justified by necessity. It is not sufficient, however, that the obstructions are necessary with reference to the business of him who erects and maintains them. They must also be reasonable with reference to the rights of the public who have interests in the streets which may not be sacrificed or disregarded. Whether an obstruction in the street is necessary and reasonable must generally be a question of fact to be determined upon the evidence relating thereto." Under this doctrine it was at first thought that the placing of a fixed track of rails in a street, on which street cars were to be operated, was an unwarranted obstruction of the street, though the cars were drawn by horses or mules; but all the courts held that it was not an unwarranted obstruction, but was a means of facilitating public travel along the street, and was therefore not a nuisance but an improved mode of use of the street for the purpose intended. The New York court, however, held that, while it was not a permanent obstruction, yet it was an additional servitude imposed upon the high-

way, as to which· the abutting owner was entitled to compensation; but all the other courts, save that of Nebraska, held that it was not even an additional servitude, and that the abutting owner was not entitled to compensation by reason of the construction of a street car track at grade in the street.

In the course of progress and the development of street transportation, the horse car was superseded by the dummy or steam line, and this by the electric car system; and it was in turn contended that each of these agencies of travel involved an unauthorized, unwarranted use of the streets, and therefore constituted an obstruction and a nuisance, or, if not a nuisance, an additional servitude imposed upon the highway, not included in or authorized by the original dedication or condemnation. This question was first considered by this court in the case of *Perry v. N. O., M. & C. R. R. Co.*, 55 Ala. 413, 28 Am. Rep. 740, wherein the court, through Stone, J., spoke as follows: "The introduction of railroads as highways of travel and transportation has seemingly disturbed some of the old landmarks, and requires of the courts, in accommodation to the spirit of progress, that we apply principles, long well understood, to new conditions and exigencies. 'All property,' says an eminent authority, 'is held subject to those general regulations which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations, established by law, as the Legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient.'—*Commonwealth v. Alger*, 7 Cush. [Mass.] 84, 85, per Shaw, C. J. 'By this general police

power of the state, persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state, of the perfect right in the Legislature to do which no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned.'—*Thorpe v. Rutland & Burlington R. R.*, 27 Vt. 140, 149 [62 Am. Dec. 625]."

In *Perry's Case* it was held that an ordinary commercial railroad laid in a street was an additional servitude, and that a municipal corporation, without express authority from the Legislature, could not authorize it.

The question was again before this court in the case of *Western Railway of Alabama v. Alabama Grand Trunk Railroad Co.*, 96 Ala. 272, 11 South. 483, 17 L. R. A. 474, in which case the authorities were reviewed; and it was held that: "Where a railroad company, under express legislative and municipal authority, constructs its road on a street in a city, the fee to which street is in the proprietors of the property abutting thereon, such railway company is not a trespasser nor its railway an unlawful obstruction or nuisance upon such street, and that an injunction will not lie in favor of such proprietor to restrain the construction of the road.—*Perry v. N. O., etc., Railroad Co.*, 55 Ala. 413, 28 Am. Rep. 740. But even in such cases, if the road is so constructed as to interfere with the easement of access residing in the proprietor of the property abutting on the street, or as to cause other special damage to his property, such proprietor is clothed with the right to prevent such injury by resort to a court of equity, or to redress the same in a court of law as he may elect.—*Highland Ave. & B. Ry. Co. v. Matthews* [99 Ala. 24] 10 South. 267 [14 L. R. A. 462]; *Evans v. Sav. & West. Ry. Co.*, 90 Ala. 54 [7 South. 758]."

5—181

In many respects a broad distinction is recognized in the authorities between urban and suburban and rural servitudes. A variety of uses to which the first may be applied without compensation to the owner of the ultimate fee, as having been within contemplation when the street was dedicated or condemned, would be an additional burden for which compensation must be made to owners of abutting property when the highway is a suburban or country road. The limited or restricted nature of the servitude of a suburban road undoubtedly leaves a very much greater right and interest in the owner of the servient estate than that which remains in the owner of a like estate in a city street; but it is not possible, under the authorities as they now stand, to mark with exactness and precise accuracy the extent of the interests and rights which remain in the owner of the servient estate in a country road.—Elliott on Roads, etc., p. 303.

The question was again considered in the case of *Birmingham Traction Co. v. Birmingham Railway & Electric Co.,* 119 Ala. 137, 24 South. 502, 43 L. R. A. 233. It was there said, as to the three modes of transportation of passengers: "The electric railways, such as we are now considering, are of comparatively recent development, yet, as is of common knowledge, they have practically superseded all systems of street railway enterprise (saving the cable systems in the larger cities), and their nature and modes of construction and operation, as affecting or not the legitimate use of streets within the implied contemplation of the dedication, have been subjects of frequent consideration and adjudication by courts of last resort in this country; and it may be said that there is almost unanimity in the adjudications that such uses are legitimate uses of streets, by the permission of municipalities, without any

right of the owner of the fee to compensation therefor."

In *Baker v. Selma Street & Suburban Railway Co.*, 130 Ala. 474, 30 South. 464, after quoting the above, it was said that: "The construction and operation of an electric street railway with municipal consent, along a public street, and conforming to its grade, with no special injury to the fee, is not the imposition of an additional servitude for which the owner of the fee can demand compensation."

The case of *Morris v. Montgomery Traction Co.*, 143 Ala. 246, 38 South. 834, was a case very much like this at bar. There the street car company proposed to lay one track only in a very narrow street. The bill alleged: "That said street was very narrow, being only 24 feet in width, and was one of the principal thoroughfares in the city of Montgomery, and was passed by a great number of people daily, in wagons, buggies, and other vehicles. That the street railway proposed to occupy 10 feet of such street, and would thus prevent the passage of vehicles thereon, which would result in the necessary abandonment of such street, to the great inconvenience and injury of complainants. That property on said street would be exposed to greater dangers from fire, for the reason that fire engines and apparatus could not pass a car thereon." The court in that case held that complainants were not entitled to injunctive relief, citing the decision of 119 Ala. 144, 24 South. 502, and 130 Ala. 474, 30 South. 464 (above quoted from), and also Joyce on Electric Law, and Booth and Nellis on Street Railroads; the court quoting and saying: " 'Streets and highways are dedicated to the new use of the traveling public, and street railways, which are for the purpose of facilitating travel, impose no additional burden upon the abutting owner, and are a public use.' If they create noise, dust, and vibrations, and are

attended with some inconvenience and even danger to life and property, so do other vehicles of travel and trade. They are legitimate uses within the original dedication of streets for the benefit of the public.— Joyce on Electric Law, § 278, 341. 'A street surface passenger railway, constructed at street grade in the usual manner and operated by animal power (or by electricity), is not per se a public or private nuisance; nor is it a new servitude imposed upon the land for which the owners of the fee are entitled to compensation.'—Booth on Street Railways, § 82. Such a use by the ordinary electric railway, with the usual means by which it is operated, is but an improved method of using the street for public travel; and there is no limit to the use of a public street for the purposes of travel thereon so long as such use does not interfere unnecessarily with the ordinary modes of travel, and is no substantial impairment of private rights of property.— Nelson on Street Surface Railroads, p. 135."

The ownership of lands which have been taken for, or dedicated as, public streets of cities, for most all practical purposes, is in the public. It is true that the naked fee often (as in this case) remains in the abutting proprietor; but this is not allowed to interfere with the use of the street as a highway by the public.

Lands once taken for, or dedicated as, public streets are taken for all time for the purpose of providing a means of passage common to all the people, and may be rightfully used in any way that will best serve this purpose. The public thus acquire the right of passage over every part of it, from side to side, and from end to end. They acquire the right to so use it, not only by the means of vehicles then in use, but also by other means and vehicles which science and the improvement of the age may invent or discover, to meet the needs of

the ever-increasing population, or which may become necessary or expedient, provided such vehicles or modes do not exclude the proper use by other modes or kinds of vehicles. Any use of the street for public travel, which is within the limits of the public easement, whether it be by old or new methods, provided it does not tend to destroy the street as a means of passage and travel common to all, is lawful and permissible. These cases seem to settle the question raised on this appeal against the contention of the complainant, appellee here, except as to the cost of paving, unless the laying of a double track in a street, instead of a single track, differentiates this case in principle, or unless section 227 of the Constitution of 1901 has charged the rules of law upon this subject.

We do not think that the laying of a double track in the street, which is 34 feet in width, and in the manner alleged in this bill, is an unwarranted use of the highway, and one not included in, nor contemplated by, the original dedication of the street in question. If one line of the kind in question is for the purpose of "facilitating travel," and "imposes no additional burden upon the abutting owner," nor a "new servitude" upon the land, for which the owner is entitled to compensation, but is "only an improved method of using the street for public travel," then two lines or a double tracking of the same line, provided the public travel justifies and demands the same, must fall within the same category.

It may be that one line or a single track will not afford proper or adequate means of transportation for the requirements and demands of a growing city; and, if not, then we can see no actionable wrong in the city's allowing or providing for two or more lines upon one street. We do not mean to say that a city cannot exceed its authority in placing so many car lines and cars

on a given street as to constitute an additional burden, or a new servitude, not contemplated or intended in the dedication of the highway; but what we mean to decide is that a double track on the street in question, under the conditions shown in the bill, is not such an additional burden or servitude as would entitle the owner of an abutting fee to compensation. It is, we think, practically certain that the street in question will be as safe and as convenient for public travel in other vehicles, after the two tracks are laid, as now.

It is very true that complainant and others who desire to have wagons and other vehicles stand at or near the curbing for the purpose of loading and unloading goods and freight may suffer some inconvenience; but, as we showed at the outset of the opinion, this is a convenience allowed them by the law, which must yield to that of public travel along the street, whether it be in cars, in wagons, on horseback, or in automobiles or in omnibuses. The old adage that "the street car is the poor man's carriage" is modernized so that the saying now is, "The street car is the poor man's automobile." The streets are primarily for public travel, for pedestrians and vehicles and conveyances in motion, and not for the purpose of their standing thereon. One of the laws of the road is, "Move on, don't stop." The policeman on duty in a crowded street proclaims it when he continually shouts, "Move on, don't block the street or sidewalk."

If the street in question is much used by many people in vehicles, as is alleged, then the complainant's right to stand his wagon in the street, at his curb, must yield to the right of the many people to pass along the street if both cannot be done at the same time. His rights and those of the public, the many travelers of the highway, are the same, whether they all be in wagons, car-

riages, omnibuses, automobiles, or in the street cars, except that the street cars must move on a fixed track, and cannot turn to the right or the left, as can other vehicles. The right of the public to pass is paramount to the right of the individual to stand.

There is shown no good reason why the complainant cannot use his premises in the same manner, after the two tracks are laid, that he did before. It might be more inconvenient and more dangerous to load and unload wagons at the curb after than before; but this is true as to all increased travel on a given street, whether it be in cars or in other vehicles. An additional line of public carriages, omnibuses, taxicabs, or stagecoaches makes travel along the highway in other conveyances more inconvenient and more dangerous, to say nothing of increasing the congestion by standing on the streets. The only difference as to another line of street cars is in degree and not in kind, except that the cars must move on a fixed track.

The bill in question claims two kinds of damages to the property of complainant, viz., damages resulting from destruction or impairment of his right of access to his property, and those resulting from increased danger to travel from collisions with passing cars. The latter is an injury or a damage which complainant would suffer in common with the general public, and one which would not authorize a private action.

The real and only serious question in the case is the alleged impairment of complainant's right of access to his residence and property which abuts on Twentieth street. The main fact alleged to show such impairment is that the car track will be laid so close to the curb as to make it impracticable and dangerous for wagons or other vehicles to stand in the street near the curb for the purpose of loading and unloading goods at his resi-

dence.   There are many affidavits to support this aver-
ment of the bill which go into details more or less.

We are constrained to hold, however, on the undis-
puted facts, that there will be no substantial impair-
ment of the easement of access to complainant's resi-
dence.   The most that can be said is that the access may
be made more inconvenient by reason of the fact that
wagons or other vehicles cannot, with safety, stand at
the curbing while a car is passing; but, as we have
before said, this is one of the natural and "to be ex-
pected inconveniences" from traffic on a street of this
kind, and one that must be held to have been contem-
plated or included in the original act of dedication or
condemnation of the land to the use of a public street
in a great city.

The case of *Wagner v. Bristol R. L. Ry. Co.*, 108 Va.
594, 62 S. E. 391, 25 L. R. A. (N. S.) 1278, is the au-
thority nearest in point that we have been able to find.
The bill in that case sought to enjoin the construction
of a surface street car track at the side or edge of the
street.   The allegations were:  (1) That an additional
servitude was imposed upon the land occupied by the
streets;  (2) that ingress and egress were unreasonably
interfered with;  (3) that complainant's property would
be thereby made less valuable, desirable, and comforta-
ble as a residence.   That state has a constitutional pro-
vision like section 235 of ours, to the extent that it
provided compensation for "injury" to property as well
as for the "taking" thereof.   The court in that case
held:  "Charter authority of a municipal corporation to
permit car lines to be built in its streets, and to deter-
mine and designate the route therefor, is not modified
by a statute under which the street car company is
acting, which provides that such tracks shall not in any
wise obstruct or interfere with the use of the street, or

damage property without compensation. The mere fact that a street railway is located on the side, rather than in the center, of the street is not sufficient to show that the abutting owner is entitled to compensation under a constitutional provision that private property shall not be damaged for public use without compensation. That a vehicle cannot stand between a street car track located on the side of the street and the curb while a car is passing does not show a violation of the rights of the abutting owner under a constitutional provision that private property shall not be damaged for public use without compensation. That the location of a street railway in a street will render abutting property less desirable and less comfortable as a residence does not entitle its owner to compensation under a constitutional provision that compensation must be made in case private property is damaged for public use."

It is further said in the opinion in that case, quoting in part from others: "In *Henry Gaus & Sons Mfg. Co. v. St. Louis, K. & L. R. A. Co.* 339 [113 Mo. 308, 20 S. W. 658] 18 L. R. A. 339 [35 Am. St. Rep. 706], the tracks were laid so close to an abutting owner's property as not to permit wagons to stand between the tracks and the property; yet it was expressly held not to come under the damage clause of the Constitution. The convenience and advantage of all the inhabitants of the city, and of the public at large, must be regarded as the objects contemplated when the street was laid out or opened. A narrower construction would require a sacrifice of the greater interests of the community and the public to the inferior and subordinate claims of the local lot owner. Such a construction of the law governing the dedication of public streets and the reserved rights of the original landowner and his assigns in the street, by unreasonably increasing the cost of rights of way or

use, would obstruct all progress and deprive the local community of the benefit to be derived from the advancements of science, invention, and discovery. The suggestion that, because a vehicle could not stand between the track and the curb while a car is passing, the appellant's rights would be violated is without merit. While appellant has unquestionably the right to occupy the street in front of his property to take away or deliver persons or goods, he may occupy the street for such purposes a reasonable length of time, and that right the street railway company must accord to him; and both must recognize that streets are established for the purpose of facilitating the passage of persons from one part of the city to another, and not for the standing of vehicles or storage of goods thereon.—See authorities above cited and Elliott on Roads and Streets, ** 716, 717, 878. In a note to *Ashland & C. Street R. Co. v. Faulkner*, 43 L. R. A. 557, it is said: 'So, while the abutting owners have an easement in a street, in common with the whole people, to pass and repass, and also to have free access to their premises, the mere inconvenience of such access, occasioned by placing a street car track so near the sidewalk as not to leave sufficient space for a vehicle to stand, is not the subject of an action. * * * So a street railway, one of the tracks of which was in such close proximity to the sidewalk in front of the premises of an abutting owner as to interfere with, impede, and prevent his complete enjoyment of the use and occupation thereof, leaving insufficient space between the sidewalk and the track to admit of any kind of vehicle to be driven or to remain in front of his premises, is not, for that reason, a public nuisance, where the title to the street vested in the city; but the injuries * * * are referable to that class of disadvantages to which one is subjected, resulting

from the lawful exercise of the absolute power of control vested in the state in connection with the title to the fee of the land.' In *Rafferty v. Central Traction Co.* [147 Pa. 579, 23 Atl. 884, 30 Am. St. Rep. 763], it was held that the right of an abutting owner to the use of the street is the same after the tracks are laid thereon and the cars running as it was before. If, at any time, he has occasion, for the presence of vehicles on the street in front of his property, to take away or deliver persons or goods, he may exercise that right for such reasonable time as is necessary for his purpose; and if, in such exercise of the right, the passage of street cars is impeded, they must wait. See, also, *Kellinger v. Forty-Second Street & G. Street Ferry R. Co.*, 50 N. Y. 206."

It follows, from what we have said, that complainant is entitled to no relief in equity under common-law principles, nor by virtue of section 235 of the Constitution of this state.

It is unnecessary for us to now construe section 227 of the Constitution for two reasons: First, the only damages sought in this bill are those as for injury to or impairment of the easement of access; and we are certain that no such damages are shown as are recoverable under section 235 of the Constitution; second, whatever may be the purpose, object, or effect of section 227 of the Constitution, it is unlike section 235 of that instrument in that it does not contemplate or require the payment of damages before the injury, and would therefore not support an action until the injury was suffered.

We are unable to see how or why the street car company, in a suit like this, should be required to refund to the complainant taxes which he has paid for paving the street in question. It is a mere incident that, if

double tracks had been laid when the streets were paved, the street car company would have been required to pay a part of the tax which complainant paid. ` The city might have required the payment of this amount as a condition precedent to the right to construct the double track; but, not having done so, it is not within the power of the chancery court, nor of this court on appeal, to require the street car company to refund to complainant any part of the tax paid by him for this paving. This is a matter that rests primarily with the city; and its action in the premises cannot be controlled or changed in a collateral proceeding like this.

We have examined many reported cases like the one in question, and we feel sure that all the cases in which injunctive relief, such as is prayed in this case, was granted are readily distinguishable from this case on one or more of the following grounds: They were decisions from courts of states such as New York, in which an ordinary surface street car track, laid at grade, was held to be an additional or a new burden or servitude, and not to have been included or contemplated in the original dedication of the highway; or the construction of the track, poles, or line was held to have practically destroyed the highway or street for travel in vehicles of other kinds; or the complainant's easement of access was held to have been materially and permanently impaired, as by the changing of the grade of the street; or the construction was held not to have been authorized by the state or the municipality which was charged with the duty of controlling or regulating such affairs; or the construction was held to have been done or attempted contrary to or in violation of the rights conferred by the state or other municipal authority. Cases of this kind are *Slaughter v. Meridian L. & Ry. Co.,* 95 Miss. 251, 48 South. 1040, 25 L. R. A. (N. S.) 1265;

*Dooly Block v. Salt Lake R. P. Co.,* 9 Utah 31, 33 Pac.
229, 24 L. R. A. 610; *Nichols v. Ann Arbor R. R. Co.,*
87 Mich. 361, 49 N. W. 538, 16 L. R. A. 371, and others
shown by note to section 636 of Lewis on Eminent Do-
main, vol. 2, pp. 1366, 1367. The distinctions are well
pointed out by the author in the text and by the many
decisions cited in the notes. For example, in the *Miss-
issippi case,* (95 Miss. 251, 48 South. 1040, 25 L. R. A.
[N. S.] 1265) the street was practically monopolized
by the street car line, and travel in other vehicles almost
prohibited. In the *Utah case* (9 Utah 31, 33 Pac. 229,
24 L. R. A. 610) the tracks were not at grade, and there
were already two other tracks in the street. In the
*Michigan case* (87 Mich 361, 49 N. W. 538, 16 L. R. A.
371) the grade was changed, and access materially im-
paired. In many other cases the construction was not
authorized by the state or the municipality. The New
York and Nebraska cases are put upon the ground that
an electric car line is an additional servitude, not em-
braced within the act of dedication.

It should be noted that the New York court has ad-
mitted that the weight and number of authorities are
against their holding; but the court adheres to its for-
mer decisions for the reason that the doctrine has now
become a rule of property, and for the sake of stare
decisis. The Nebraska decisions have been rather severe-
ly criticised, and, without approving or disapproving,
we merely quote from the Supreme Court of Wisconsin,
where it is said: "We are aware that there is at least
one case decided in a court of last resort where a dif-
ferent conclusion was reached. We refer to *Jaynes v.
Omaha St. R. Co.,* 53 Neb. 631, 74 N. W. 67, 39 L. R. A.
751. The opinion there shows that the subject treated
did not receive careful study. The conclusion reached
is contrary to all the authorities cited by the court. A

very few cases were cited—but a small fraction of those where courts have considered the subject under discussion—yet those referred to were all the Nebraska court could find, so said in the opinion. The decision was based on the theory that any exclusive occupancy of any part of a street by a street railway is a new burden on the fee title thereof. An effort was made to harmonize the contrary holdings in the few cases cited with the opinion, which seems to have been successful in the judgment of the writer of the opinion, yet success was reached by the exercise of judicial ingenuity that has few parallels."—*La Crosse C. R. Co. v. Higbee,* 107 Wis. 399, 400, 83 N. W. 704, 51 L. R. A. 923.

Complainant relies in part for his contention upon the doctrine announced by Mr. Lewis in his valuable work on Eminent Domain, and he quotes a text therefrom. We, like complainant, believe that Mr. Lewis has stated the true doctrine as to the right to relief of abutting owners in cases like this; and we not only quote the text relied upon by complainant, but we also quote the context as stating the true rule as to the right of the abutter to injunctive relief. In section 636 (pages 1368, 1369, 1370, vol. 2) he says: "A distinction is made in some of the states between street railroads and commercial roads; the former being held to be a legitimate use of a street as a public highway. According to this view, the abutting owner has no more ground of complaint in case a street railroad is laid down and operated in front of his property than he would have if a line of omnibuses was operated on a street. But, where street railroads are put in the same category with commercial roads, the same rules and principles will apply in respect to the rights of abutting owners. They may enjoin the use of the street for such purposes in front of their property until the right has been obtained in

[B'ham Ry. L. & P. Co. v. Smyer.]

the usual way. Where a statute gave compensation, it was held the abutter could enjoin until compensation was made. The construction of a railroad without lawful authority or after the authority has expired may be enjoined by the abutting owner. Courts which hold as a general rule that street railroads are a legitimate street use have nevertheless enjoined the construction of such a road where it would be especially injurious to the abutter, as where it was constructed with cuts and fills, or where there were already two tracks in the street. In one case a mandatory injunction was granted to compel the removal of a trolley pole so placed as to unnecessarily injure plaintiff. Where the company is required by ordinance to place its tracks in the center of the street, a different location may be enjoined by abutters." Our state, as we have shown, is one of those in which electric street cars are classed with omnibuses.

It follows from what we have said above that complainant can take nothing by his cross-assignment of errors; that the appeal of respondent (appellant here) is well taken; and that its demurrers to the bill should have been sustained and the temporary injunction dissolved. A decree to this effect will be here entered.

Affirmed on the cross-appeal, and reversed, rendered, and remanded on the main appeal. All the Justices concur.