(128 So. 454)

# CRAWFORD v. ALABAMA POWER CO.
## 4 Div. 442.

Supreme Court of Alabama.
May 15, 1930.

R. W. Miller, of Abbeville, for appellant.

Martin, Thompson, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellee.

GARDNER, J.

■ The sole question presented is whether or not the erection of the transmission line on the public highway creates an additional servitude upon the fee of the abutting owner. The defendant company is a public service corporation, and the distribution of its electric current for heat, light, and power among the inhabitants of the territory to be served is a public use. State of Washington, ex rel., etc., Superior Court, 142 Wash. 270, 253 P. 115, 58 A. L. R. 779; Mt. Vernon Woodberry Cotton, etc., Co. v. Alabama Interstate Power Co., 240 U. S. 30, 36 S. Ct. 234, 60 L. Ed. 507; Wiegand v. Alabama Power Co., 220 Ala. 620, 127 So. 206.

■ That the use of a public highway for such purpose is a legal and proper one is well supported by the authorities. State of Kansas ex rel. v. Webber, 88 Kan. 175, 127 P. 536, 43 L. R. A. (N. S.) 1033; 20 Corpus Juris, 324; 9 R. C. L. 1193.

There is here, however, presented no occasion for consideration of those authorities in view of the express provision of our statute (section 7197, Code 1923) that "such corporations shall have the right and authority to erect and operate tower, pole and wire lines across, along, and on public roads, subject to the regulation of the court of county commissioners or board of revenue of the counties in which said roads are located." In the erection, therefore, of the transmission line on the public road defendant was in the exercise of a legal right in a proper manner, and for a public purpose, as disclosed by the admitted facts.

■ Upon the question of infringement upon the rights of the abutting property owner by the erection of such and kindred lines as telephone and telegraph, the authorities are in irreconcilable conflict. A review of them here would serve no useful purpose, and extend this opinion to undue length. In the following citations will be found the cases presenting the varying views of the courts: Karcher v. Wheeling Electrical Co., 94 W. Va. 278, 118 S. E. 154, 30 A. L. R. 1044; Citizens' Tel. Co. v. Cincinnati, N. O. & T. R. R. Co., 192 Ky. 399, 233 S. W. 901, 18 A. L. R. 615; N. Y. Cent. & Hudson R. R. Co. v. Cent. Mass. Electric Co., 219 Mass. 85, 106 N. E. 566, L. R. A. 1915B, 822; Cumberland Tel. & Tel. Co. v. Avritt, 120 Ky. 34, 85 S. W. 204, 8 Ann. Cas. 955; Frazier v. East Tenn. Tel. Co., 115 Tenn. 416, 90 S. W. 620, 3 L. R. A. (N. S.) 323, 112 Am. St. Rep. 856; Cater v. Northwestern Tel. Exch. Co., 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310, 51 Am. St. Rep. 543; Query v. Postal Tel.-Cable Co., 178 N. C. 639, 101 S. E. 390, 8 A. L. R. 1290; McCann v. Johnson County Tel. Co., 69 Kan. 210, 76 P. 870, 66 L. R. A. 171; Gurnsey v. Northern Calif. Power Co., 160 Cal. 699, 117 P. 906, 36 L. R. A. (N. S.) 185; People v. Eaton, 100 Mich. 208, 59 N. W. 145, 24 L. R. A. 721; Callen v. Columbus Edison Elec. Light Co., 66 Ohio St. 166, 64 N. E. 141, 58 L. R. A. 782; City of Mil-

waukee v. Milwaukee Electric Ry. & Light Co., 173 Wis. 400, 180 N. W. 339, 181 N. W. 821, 13 A. L. R. 802; 20 Corpus Juris, 721; Benton v. Yarborough, 128 S. C. 481, 123 S. E. 204, 34 A. L. R. 402; 10 R. C. L. 113; 4 Permanent Sup. R. C. L. pp. 2652-3; Curtis Law of Electricity, §§ 278-291; Keasebey on Electric Wires, c. IX.

The conflicting opinions are well illustrated by the following taken from Curtis on the Law of Electricity, § 278: "On the question whether an electric, telephone or telegraph line is an additional servitude upon the abutting owner, practically the only point that the courts are in harmony on is that there is an irreconcilable conflict in the decisions. The situation was pertinently summed up by the Supreme Court of Kansas in the following language: 'Few questions have received more consideration from the courts in recent years, or given rise to more conflict of judicial opinion, than this one. In some cases the use has been limited to travel by such methods as were in vogue when the highway was established, while others include all method, old or new, and hold it to be, immaterial whether they were in use, or even thought of, when the easement was acquired. Some confine the use to moving persons, animals, and vehicles, while others would include stationary appliances used in the propulsion or conveyance of persons and things over the highways. By some it is limited to transportation of persons and things tangible while others extend it to communications which are transmitted unseen, by electric vibrations. Some treat it as an additional burden when the fee of the highway is in the adjoining owner, and others do not regard it to be such whether the fee is in the public or the adjoining owner. In still others a distinction is made between highways in the country and streets in the city, holding that city streets have always been designed and used for purposes not appropriate for rural highways.' All courts, however, agree that if special damage of a substantial nature is caused to the abutting owner, such as arises from the obstruction of the right of passage to and from the highway, the owner is entitled to relief."

As stated by the author of the note to Frazier v. East Tenn. Tel. Co., supra: "The question depends primarily, of course, upon what may be considered the purposes for which a street is dedicated or established,— whether its use must be confined to the recognized uses at the time of its establishment, or whether it may be subjected to new modes of use which advancing civilization and the increased complexity of business and social life render necessary." And as said by the court in Building Association v. Bell Tel. Co., 88 Mo. 258, 57 Am. Rep. 398: "When the public acquires a street, either by condemnation, grant, or dedication, that it may be applied to all uses consistent with, and not subversive of the proper uses of a street, and not inconsistent with the uses contemplated in the dedication, grant or condemnation, and that it is only when the street is subjected to a new servitude, inconsistent with and subversive of its use as a street, that the abutting owner can complain. The diversity of opinion is not as to the rule itself, but as to its application, that is, as to whether this or that particular use is not consistent with the proper use of the street."

Upon the one hand many of the courts hold to the view that the proper use of the public streets and highways is to be determined by the use in vogue at the time of the dedication, while, upon the other, the courts adopted the broader view that the uses of a public highway were expansive, not confined to uses already permitted or even in contemplation at the time, but admitting new uses, consistent and proper, as civilization advances. Magee v. Overshiner, 150 Ind. 127, 49 N. E. 951, 40 L. R. A. 370, 65 Am. St. Rep. 358; Cater v. Northwestern Tel. Exch. Co., 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310, 51 Am. St. Rep. 543.

We consider the question here presented as foreclosed by former decisions of this court. The two conflicting views above noted were squarely and forcefully presented in Hobbs v. Long Distance Tel. & Tel. Co., 147 Ala. 393, 41 So. 1003, 1005, 7 L. R. A. (N. S.) 87, 11 Ann. Cas. 461. The question was fully discussed and considered, and the case of Frazier v. East Tenn. Tel. Co., supra, from the Tennessee Supreme Court, was cited with approval. In this latter authority the opinion noted the cases upon each side, and, while conceding that the weight of authority from a numerical standpoint was to the contrary, held that the better reasoning favored the broader and more expansive view, and that the erection of telephone poles and wires in the public street or highway created no additional servitude upon the fee. Such was likewise the deliberate conclusion of this court in the Hobbs Case, the soundness of which has never been questioned by any subsequent decision. Indeed, a like course was followed upon the question of additional servitude in the construction of an electric street railway, as appears by a consideration of the case of Birmingham Ry., Light & P. Co. v. Smyer, 181 Ala. 121, 61 So. 354, 47 L. R. A. (N. S.) 597, Ann. Cas. 1915C, 863.

In the Hobbs Case, the court reasoned that it was as much a proper use of the highway to send a message by electrical vibrations over the wire as by letter in a mail pouch, and that the abutting property owner had no more cause for complaint in the one than in the other. The same line of reasoning, therefore, must be held applicable to the sending

of the electric current for heat, light, and power.

This question was also considered by this court in the recent case of Alabama Power Co. v. Christian, 216 Ala. 160, 112 So. 763, 764, and the conclusion reached there was no distinction between the two, the court saying: "We see no reason to doubt that, for the purpose in hand, lines for the transmission of light and power must be placed in the same category with telephone and telegraph lines." Indeed, that such would be the logical result in those jurisdictions, holding to the view that telephone and telegraph lines created no additional servitude, was foreseen by Mr. Curtis in his work on the Law of Electricity, wherein is found the following expression: "It would naturally be expected that the decided conflict of opinion whether telegraph and telephone lines constitute an additional burden would be reflected in the decisions relative to electric lines used for private lighting."

It is suggested that the foregoing expression in the Christian Case was dictum, and not binding, but a careful consideration of that authority will disclose that the treatment of the question here involved was relevant to the case and pressed by counsel in argument, and, whether or not absolutely essential to the conclusion reached, was duly considered as in logical sequence of discussion.

We therefore consider the question in principle at least settled by these authorities, and entertain the view that a contrary conclusion would be entirely out of harmony with logic of the Hobbs Case, supra, which was approvingly noted in the Christian Case, supra.

It is further suggested, however, that the Christian Case concerned urban property, and that a different rule applies to the rural district. The authorities are likewise in conflict upon this question. But the argument was pressed upon the court in the Hobbs Case, and there given due consideration. The rural district was there involved, and the question was pointedly presented. The court cited Keasebey on Electric Wires, § 103, where the author indicates such a distinction not well founded, and used the following language in reference thereto: "Some of the cases have drawn a distinction between urban and suburban roads, but in regard to wires and posts there would be no reason for declaring them burdensome in a city (where they accumulate in such numbers as to interfere with the operation of engines in extinguishing fires) than in the country where

there are but few and far away from houses." The opinion in the Hobbs Case, supra, was delivered nearly a quarter of a century ago, and present day conditions demonstrate that the author looked into the future with a prophetic eye when he further wrote: "We may add that the uses of the telephone are as important in the country as in the city, and it does not take a prophet's ken to see that in the near future they are to perform an important part in bringing the rural districts within the beneficial enjoyment of city improvements."

The language is equally applicable to the supply of light, power, and heat by means of the electric current delivered through the transmission lines throughout the state. Indeed, it is common knowledge that in many rural sections within the borders of this state these modern improvements already exist and are in daily use by those bordering the territory so served, and who is bold enough to deny that within the not far distant future the public highways in rural districts may also be in a large measure electrically lighted? Palmer v. Larchmont Electric Co., 158 N. Y. 231, 52 N. E. 1092, 43 L. R. A. 672. The vanguard of progress moves steadily onward, and such a prophecy has as firm a foundation as existed for the rural telephone in the Hobbs Case. In principle, therefore, the distinction between urban and rural districts is without effect upon the question here presented.

In the Hobbs Case, supra, the court was also careful to note that, if the abutting owner shows there will result actual and substantial injury to his property, he is entitled to compensation. So the decision here is confined to the sole question whether or not the construction of the line in the public highway creates an additional servitude upon the fee. Had the bill disclosed any interference with complainant's operation of his road or any actual, peculiar, or substantial injury, a different question would of course be presented.

We may further note our interpretation of the language of the answer that the construction of this transmission line is for a public use and for distribution of the electric current to those within the range of its territory and along its route.

We are of the opinion the decree is correct and will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.