174 So. 866

**ALABAMA POWER CO. v. CULLMAN COUNTY ELECTRIC MEMBER-SHIP CORPORATION.**

6 Div. 70.

Supreme Court of Alabama.

May 20, 1937.

Rehearing Denied June 17, 1937.

St. John & St. John, of Cullman, and Martin, Turner & McWhorter, of Birmingham, for appellant.

. James & Stewart, of Cullman, for appellee.

FOSTER, Justice.

This is a suit by appellant to enjoin appellee from engaging in the electric utility business within the area in which appellant has a permit to serve a like business to the public. The claim is that appellee, though a public utility, has no certificate of convenience and necessity required by section 9795, Code. That section of the Code prohibits the construction of a plant property or facility for the production, transmission, delivery, or furnishing of electricity until written application is made to the Public Service Commission, and it shall issue a certificate of convenience and necessity.

Section 9742, Code, defines a utility, when used in that article, to mean and include any person not engaged solely in interstate commerce who shall own, operate, lease, or control any plant, property, or facility for the generation, transmission, or distribution, sale, or furnishing to or for the public of electricity for light, heat or power, or other uses.

■ Appellant invokes the rule stated, as follows, in Springfield Gas & Electric Co. v. Springfield, 292 Ill. 236, 126 N.E. 739, 18 A.L.R. 929 (and approved in Frost v. Corporation Comm., 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483): "A private corporation lawfully operating a public utility may have an injunction against another private corporation operating without authority of law a similar utility which competes with and injures the former's business."

The only requirements of this principle which need consideration, and argued at the bar, are (1) that appellee is a utility, and (2) that it is required as such to have a certificate of convenience and necessity under section 9795, supra, to make its operations legal.

We will consider those questions in the order as stated. It must own, operate, lease, or control facilities for the distribution, sale, or furnishing of electricity to or for the public, since it is not supposed to be a utility upon any other basis. It was created and operates under authority of an act of the Legislature of Alabama, approved February 7, 1935, page 100, amended by act approved July 8, 1935, p. 229. It is alleged to be operating by authority of that act, and without a certificate of convenience and necessity. It is a public electric utility if corporations thus organized and operating are so made by that act.

It is declared in section 2 that the corporation is without "pecuniary profit for the purpose of promoting and encouraging the fullest possible use of electric energy in the State by making electric energy available to inhabitants of the State at the lowest cost consistent with sound economy and prudent management of the business of such corporations."

"Person" or "inhabitant" is defined to mean and include "natural persons, firms, associations, corporations, business trusts, partnerships and bodies politic."

"Acquire" shall "mean and include construct, acquire by purchase, lease, devise, gift or the exercise of the right of eminent domain." Section 3.

"The natural persons executing the certificate of incorporation shall be residents of the territory in which the operations of the corporation are principally to be conducted who are desirous of using electric energy to be furnished by the corporation." Section 5.

The corporate purpose is to render service to its members only, and no one shall become a member unless he shall use its service, and shall pay a membership fee of $10; provided, that if it shall acquire "electric facilities already dedicated or devoted to the public use it may, for the purpose of continuing existing service and avoiding hardship, continue to serve the persons served directly from such facilities at the time of such acquisition without requiring that such persons become members." Section 9, as amended (Gen.Acts 1935, p. 230, § 2).

It is given the power, among other things, (c) "To acquire, [which we assume means as defined in section 3, supra], hold and dispose of property, real and personal, tangible and intangible, or interests therein and to pay therefor in cash or on credit." (f) "To construct works across or along any street or public highway, or over any lands which are now or may be the property of this State or any political subdivision thereof without obtaining any franchise or other permit." (Not now considering the effect of section 220 of the Constitution.) Section 11.

No bonds or obligations of the corporation shall be issued or sold "until consent to the issuance and sale thereof shall

have been given by the Public Works Board of Alabama or in the event no such body is in existence at the time, by the Alabama Public Service Commission, to be evidenced by resolution or order under seal of such body granting such consent." There must be . a public hearing. The board shall declare the purpose to be subserved, and uses for the money, and it shall be used only for the purpose approved by the board or commission. Section 12½.

It is also provided that the corporation may extend its operations into new territory (that is, territory not described in its certificate of incorporation as required by section 4), by an amendment to its certificate of incorporation, provided that, if it includes part of the territory of another corporation, amendment of the certificate covering the proposed extension shall contain a statement to the effect that such other corporation or corporations have been requested in writing to. construct the extensions, and declined to do so. This is in section 17.

The rates charged the customer members .shall be sufficient to pay operating and maintenance expenses, and the principal and interest of its obligations and reserves. The excess shall be returned to the members in some form. Section 18, as amended (Gen.Acts 1935, p. 230, § 4).

The corporation is given other powers as to management, etc., usual in a private corporation. It is not expressly required to get a certificate of convenience and necessity, nor expressly exempted from the requirement made in section 9795, supra.

To summarize the pertinent features of the act as respects the question of whether a corporation formed under it is a public utility, we note the following: (1) It is not for pecuniary · profit. (2) It is to make electric energy available to inhabitants of the state (in its described area), and promote and encourage their use to the extent most useful. (3) It confers the broad right of eminent domain. (4) It does not limit or restrict the right of. any person to become a member and consumer of its service. (5) It confers the right to construct its works across or along the public highways and streets, even without obtaining permission, such as is required by section 220, Constitution. (6) It can issue no .bonds without a permit from the Public Works Board, or, in the alternative, Alabama Public Service Commission. (7) It cannot encroach on the territory of another such corporation until the latter has declined to serve. (8) The formula for fixing the amount of its tolls and charges is fixed by law.

The certificate of incorporation contains a declaration that "any person who shall agree to use energy supplied by the corporation (from its lines) may be admitted to membership * * * upon complying with the other terms and conditions with respect to membership contained in this certificate of incorporation or in the by-laws." One purpose is declared to be "to generate, manufacture, purchase, acquire and accumulate energy for its members and to transmit, furnish, sell and dispose of such electric energy to its members and to such other customers as may validly be served by the corporation pursuant to 'said Electric Membership Corporation Act."

This is within the definition of a public electric utility declared in section 9742 (3) Code, and the law generally. Section 23 of the Constitution provides that private property shall not be taken for private use or for the use of corporations, other than municipal, without the consent of the owner, except certain rights of way.

■ In conferring the general right of eminent domain, the Legislature must be given credit for intending not to violate section 23, Constitution, by conferring such power on a corporation, not municipal, for private use. Harvey v. Warren, 212 Ala. 415, 102 So. 899; Mt. Vernon-Woodberry Cotton Co. ' v. Alabama Interstate Co., 240 U.S. 30, 36 S.Ct. 234, 60 L.Ed. 507; 20 Corpus Juris 548, § 35. '

■ The unrestricted gratuitous, grant by the state to the corporation to make permanent structures across and along the highways must also be considered as an indication that the Legislature considered it was aiding a public or quasi public enterprise. Crawford v. Alabama Power Co., 221 Ala. 236, 128 So. 454. This right does not exist without a state grant, Mobile v. Farrell, 229 Ala. 582, 158 So. 539, though it is not an additional servitude, Crawford v. Alabama Power Co., supra; Hobbs v. Long Distance Tel. Co., 147 Ala. 393, 41 So. 1003, 7 L.R.A. (N.S.) 87, 11 Ann.Cas. 461.

But the grant of the right to construct permanent fixtures along the highways for the use in question, given to a corporation organized for a definite purpose,

and for the general benefit of the inhabitants of a given territory, without consideration, burdensome provisions, or limit of time, is a strong circumstance that the grantee was intended to be one who would operate for the public benefit. Crawford v. Alabama Power Co., 221 Ala. 236, 128 So. 454.

It seems also reasonably clear that it is contemplated by the act, and it is provided in the articles of incorporation, that electric service shall be available to all the inhabitants of the territory to be served, who comply with the conditions. The certificate of incorporation must describe the territory in which the operations are to be conducted, section 4, subject to extension to additional territory upon an amendment to the certificate, section 17. If the territory is fantastic in extent or void for uncertainty, its existence as a corporation cannot be tested by injunction but it is usually done by quo warranto. Gelders v. State ex rel. Freeman, 164 Ala. 592, 51 So. 232; State ex rel. Kinney v. Steppville, 232 Ala. 407, 168 So. 433; State ex rel. Allen v. Phil Campbell, 177 Ala. 204. 58 So. 905.

It therefore resembles very strikingly the service rendered by a municipal corporation to its inhabitants. It relieves them of the necessity of forming a municipal corporation for that purpose, and as a substitute allows the inhabitants who wish the service to form a corporation for that purpose only. When a municipal corporation supplies its inhabitants with light, gas, or water service, it is not in the exercise of a governmental function, but is acting in the capacity of a private or quasi public corporation. Springfield Gas & Electric Co. v. Springfield, supra; Montgomery v. Greene, 180 Ala. 322, 60 So. 900. When those same inhabitants have not formed a municipal corporation, but, by authority of law, a private or quasi public corporation for such service, there is no substantial difference between the two forms of corporation in respect to that service. Montgomery v. Greene, supra.

It is contemplated in both that all the inhabitants in the described territory shall be eligible to obtain the service by complying with the reasonable conditions. So that they are both serving and constituted to serve the public in that area—an essential element of a utility. State ex rel. Wood v. Consumers' Gas Trust Co., 157 Ind. 345, 61 N.E. 674, 55 L.R.A. 245.

The Legislature has conferred on the corporation a franchise right to use the public highways. Mobile v. Farrell, supra. The acceptance of such a grant carries with it the duty of supplying all persons accessible to its lines with electricity when they meet the conditions prescribed. Mobile v. Bienville Water Supply Co., 130 Ala. 379, 384, 30 So. 445, 447; Montgomery v. Greene, supra. The public contemplated need not reach beyond accessibility to service to show that it is a utility.

The bill alleges that the corporation proposes to serve the public in that territory, and has been soliciting membership among the public so as to be subject to service.

The restriction on the right to issue bonds was, we think, intended as a protection to the members themselves, and so as to prevent such management as would cripple the corporation in its ability to serve, as well as a blue sky measure within the state's police power to protect the investing public, and shows a control in that respect beyond the requirements of a simple blue sky law, but such as applies to utilities. Also the prohibition of one corporation to encroach on the territory of another, except as prescribed, contains a regulation against competition not applicable to nonutilities and private business.

Likewise the rules laid down as to the fixation of fees and charges for service, and the use to be made of the income, have no application to private business. The regulation of charges for services or commodities is a legislative function only when applicable to business affected with a public interest. City of Mobile v. Rouse, 233 Ala. 622, 173 So. 266; Franklin v. State Milk Control Board, 232 Ala. 637, 169 So. 295.

The Legislature should not be supposed to have intended to do something which was not in its power, when it was within its power if it intended to create a corporation to serve the public so as to affect it with a public interest. It set up a series of regulations not otherwise appropriate or within its power. It cannot be said to have a purpose to free the corporation from state control when it at the same time exercises such control. Having set up such a reserved power, the right to exercise it is not limited by the extent to which it is exercised. That it assumes to

exercise control shows a purpose to affect it with a public use in respect to a matter which it may or may not declare to be so affected.

The chief uses in which the public is interested in the operation of this corporation are those which are elements of a public utility. But the important matter in that respect, which the Legislature seemed to be certain about, is the exercise of supervision by its authority, and proceeded to enact regulatory measures.

Many cases have been cited by appellant on the one hand and appellee on the other expressive of their opinion, respectively, that corporations engaged in certain operations are or are not public utilities. But those cases do not interpret statutes which provide the conditions on which the corporation is organized, and which determine the nature of the operations, whether such corporation exercises the authority so conferred or not, such as we are now considering.

A corporation organized under general laws applicable to all corporations may set out a purpose and have the power to engage in the utility business, but not be a utility until it engages in such service or holds itself out to do so. Hinds County Water Co. v. Scanlon, 159 Miss. 757, 132 So. 567; Allen v. Railroad Commission, 179 Cal. 68, 175 P. 466, 8 A.L.R. 249, note, page 286.

But when a specific statute authorizes a corporation to be organized to do a certain nature of business for a certain purpose, and to have privileges and powers of a public sort, when it is so organized and undertakes business by such authority, its qualities are controlled by the provisions of the act. It can only perform as there provided, and cannot circumscribe its duties within limits not there set out.

The Legislature has set up authority for a corporation and affected it with a public interest, and has control over it by present and future legislation such as ordinarily is applicable to a utility, and has given it those qualities which the Code provisions and general principles define as constituting a utility.

From the fact that appellee is a utility, appellant passes easily to the conclusion that it is operating illegally, since it has no certificate of convenience and necessity under section 9795, Code. But we think that the act contains every internal evidence of an intention to exempt a corporation so organized from all regulatory requirements not prescribed for it in the act itself. It shows an intention to make the act cover the whole field of regulation which should apply at the present time.

It is also contended that when so construed it is an unreasonable classification, requiring a certain duty by some electric utility corporations serving the public and exempting others, and violates due process, and equal protection. That would result if the classification were unreasonable and arbitrary.

This contention was made in respect to the exemption of municipal corporations from the requirements of the utility laws. In the case of Springfield Gas & Electric Co. v. Springfield, supra, the Supreme Court of Illinois approved the classification on reasoning which is applicable to this appellee, as follows:

"The purposes of the Public Utilities Act were to prevent exorbitant rates, unjust discrimination, and undue preferences in rates between different consumers and at the same time to protect public utilities from local influences which would compel them to render services at such low rates that efficient services to the public would be thereby impaired. To enable consumers to protect themselves against exorbitant rates and unjust discrimination without compelling them, in the first instance, to resort to their right to a hearing under the act on the question of rates, sections 33, 34, and 35 were incorporated in the Public Utilities Act, requiring the filing of schedules of rates and the posting and publishing of the same. No such requirement is necessary for the protection of the consumer when the utility is owned and operated by the municipality. * * * Their charges for such services are simply to be high enough to produce revenue sufficient to bear all costs of maintenance and operation, to meet interest charges on bonds and certificates issued on account thereof, and to permit the accumulation of a surplus or sinking fund sufficient to meet all outstanding bonds or certificates at maturity issued on account of such utilities. The statute does not contemplate that the rates shall be higher or lower than for the purposes aforesaid, no matter what effect such rates and charges may have upon other corporations or persons owning or operating public utilities. * * *

"It is contemplated that private corporations and persons shall realize profits. The Legislature had the right to assume that the rates and charges of each of these two classes of public utilities would not and could not be the same to consumers. It is clear, therefore, that the Legislature acted within its constitutional rights and powers in enacting the two statutes and making different provisions in so far as the same were necessary to accomplish the purposes for which the two acts were enacted."

This has been approved in our case of Culpepper v. Phenix City, 216 Ala. 318, 113 So. 56. It was so affirmed by the United States Supreme Court in Puget Sound P. & L. Co. v. Seattle, 291 U.S. 619, 54 S.Ct. 542, 78 L.Ed. 1025.

We quote as follows from the opinion of that court in the Springfield Case, 257 U.S. 66, 42 S.Ct. 24, 25, 66 L.Ed. 131: "The private corporation whatever its public duties is organized for private ends and may be presumed to intend to make whatever profit the business will allow. The municipal corporation is allowed to go into the business only on the theory that thereby the public welfare will be subserved. So far as gain is an object it is a gain to a public body and must be used for public ends."

Appellee corporation must confine its operations to the territory described in its certificate, or as amended, and its justification is only on the theory that the public in that district will be served with electricity to the "fullest possible" extent, and "at the lowest cost consistent with sound economy and prudent management." It is the same motive which the authorities declare exists when a municipal corporation engages in such service. The latter is separately classified for this purpose not because it is a municipal corporation in the exercise of governmental powers.

If the municipal corporation could be stripped of all its governmental functions, but retain only that of the service of electricity to its inhabitants, it would occupy a position such as is approved in those cases, and be essentially similar to that of this appellee in respect to the inhabitants of the territory described in its certificate of incorporation. "Municipalities stand upon the same footing in this respect as would an individual or private corporation," quoted from Montgomery v. Greene, supra, 180 Ala. 322,

at page 333, 60 So. 900, 903. The Springfield Case, supra, justified municipal corporations as a separate class in this respect because of their status similar to that of appellee without giving effect to their governmental qualities. It was dealing with a law which required the city to charge for the service only such amount as will produce no net gain from the operation.

There are no profits for members of appellee. If there should be, it is to be restored to the members who contributed to the income, on some equitable bases. The gain to them was evidently intended to be in the abundance of cheap service. There is no capital invested on which a return is contemplated. No capital stock is provided for.

A similar difference in classification has been approved for taxation when an exemption of a co-operative utility was justified because it was nonprofit making, but for the mutual benefit of its members, with this observation: "The exempt property is used for the personal convenience of the owners, while the taxed property represents commercial investment for profit-making purposes." Citizens' Tel. Co. v. Fuller, 229 U.S. 322, 33 S.Ct. 833, 836, 57 L.Ed. 1206.

And in the case of German Alliance Ins. Co. v. Lewis, 233 U.S. 389, 34 S.Ct. 612, 621, 58 L.Ed. 1011, L.R.A.1915C, 1189, the court was dealing with a program by which the rates of fire insurance premiums were regulated, and held that the subject was affected with a public interest, and that the Legislature was within its constitutional power in respect to the program, and further that it made a classification not subject to attack because it exempted from such regulation farmers' mutual insurance companies which insure only farm property of its members, and observed: "There are certainly differences between stock companies, such as complainant is, and the mutual companies described in the bill, and a recognition of the differences we cannot say is outside of the constitutional power of the legislature."

The case of Frost v. Corporation Comm., 278 U.S. 515, 49 S.Ct. 235, 238, 73 L.Ed. 483, is relied upon as an authority supporting appellant. But it is shown that the corporation in question was not organized under the act of 1917 of Oklahoma for mutual help, but under the act of 1919

with capital stock; allowed to do business with others, to make profits, and declare dividends. "Such a corporation is in no sense a mutual association," as there declared, but does business with the general public for the sole purpose of making money. Therefore the differences relied on to justify the classification are there said to be without substance. But in the same opinion it was declared that one organized for mutual co-operative purposes under the act of 1917 could be classified separately from others in respect to the necessity for a certificate of 'convenience.and necessity. It was dealing with cotton gins declared to be affected with a public interest when so provided by an act of the Legislature. The majority opinion was written by Justice Sutherland, with the minority by Justice Brandeis. The ground ·of dissent in this connection was on the question of whether the corporation organized under the act of 1919, as just described, .furnished a basis for a just classification. The majority held that it did not, and the minority that it did. But both agreed that one organized under the act of 1917, in all essentials similar to appellee here, did furnish a basis for such classification, on the authority of American Sugar Refining Co. v. Louisiana, 179 U.S. 89, 21 S.Ct. 43, 45 L.Ed. 102, and Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op. M. ·Ass'n, 276 U.S. 71, 48 S.Ct. 291, 72 L.Ed. 473.

All the cases we have seen justify the Legislature in classifying separately mutual co-operative organizations and corporations created not for profit making but for co-operative benefits to its members, and doing business in the main with its members, so as to exempt them from the operation of laws applicable to enterprises conducted for making a return on their invested capital.

The cases cited by appellant in which`it is held that co-operative utility companies are subject to the general utility laws are where there was no statute making a different classification for them. When that is done, we cannot say that there is no reasonable basis for it.

We are not impressed with the contention that the act violates section 45 of the Constitution because the title refers to a nonprofit organization, and the body of the act requires sufficient profit to pay the principal and interest of its obligations, in addition to operating expenses. We think profit here is such as will exceed its operating cost after paying the obligations incurred in its operations, and in the construction and extension of·its service. This is not contemplated by the act. That is what is implied, if not so expressed, in the Springfield Case, supra.

·We have stated our views upon the contentions made by appellant as we understand them. The result is that there was no error in sustaining the demurrer to the bill.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.