226 Miss. 227 (1955)
83 So.2d 837
CAPITAL ELECTRIC POWER ASSN.
v.
McGUFFEE, et al.
No. 39812.
Supreme Court of Mississippi.
December 19, 1955.
Wm. Harold Cox, Jackson, for appellant.
*230 Teller & Biedenharn, Vicksburg, for appellees.
*234 KYLE, J.
This case is before us on appeal by Capital Electric Power Association, defendant in the court below, from a decree of the Chancery Court of Warren County awarding injunctive relief and damages to Mrs. Gertrude McGuffee *235 and her husband, H.L. McGuffee, complainants in the court below, for the wrongful refusal of the power association to furnish electric service to the complainants because of pending litigation between the defendant power association and the owner of the premises occupied by the complainants as lessees.
The bill of complaint in this case was filed by Mrs. McGuffee and her husband on September 13, 1954.
The complainants alleged in their bill of complaint they had rented from Mrs. Emma Hinson a dwelling house on a 27-acre tract of land, in Warren County, which was owned by Mrs. Hinson, and that they had intended to move into the house on September 1, 1954, and occupy the same as a home; that the house was properly wired for electrical service and had been theretofore served with electricity by the defendant; that, after renting the house, Mrs. McGuffee had gone to the principal office of the defendant in the Town of Clinton and had signed an application for electrical service on the form prescribed by the defendant and had paid the required fee of $5, for which a proper receipt was issued to her by the defendant's office representative; but a short time thereafter she was notified by the defendant's manager that the complainants would not be served with any electricity unless Mrs. Hinson first dismissed a lawsuit which she had filed against the defendant. The complainants further alleged that they had a large family, including five children of school age, and that the house which they had rented from Mrs. Hinson was located on a school bus route; that the complainants and their family could not enjoy the advantages and comforts of home life without electrical service; that they stood ready at all times to comply with each and every regulation of the association and had agreed to pay the minimum charge called for in the contract which Mrs. McGuffee had signed when she paid the $5 fee and signed the application for such electrical service. The *236 complainants alleged that they had suffered much inconvenience and hardship as a result of the defendant's refusal to furnish such electrical service; that the defendant's action in refusing to furnish such service for the reason assigned was both wrongful and malicious. The complainants asked that a mandatory injunction be issued forthwith requiring the defendant to furnish electrical service to the complainants upon the same terms and conditions as such service had been furnished to former occupants of the leased premises, and that upon the final hearing the injunction be made permanent and that the complainants be awarded compensatory and punitive damages and a reasonable attorney's fee.
After notice to the defendant and a hearing the chancellor issued a temporary mandatory injunction requiring the defendant to install and maintain electrical service in the house which the complainants expected to occupy, and the complainants moved into the house immediately thereafter. The defendant filed its answer to the bill of complaint on October 11, 1954, and the cause was heard upon the pleadings and proof at the regular January 1955 term of the Court.
Three witnesses testified during the hearing.
Mrs. McGuffee testified that she and her husband had rented the house from Mrs. Hinson, the owner, during the month of August, and expected to move into the house on September 1st. They were to pay $30 a month as rent. They had made an inspection of the property before renting the same, and had seen that the dwelling house was properly wired for electrical service. Mrs. McGuffee stated that she had electrical appliances, which included a refrigerator, a radio, a television set, an electric iron, and an electric hot plate. She had five children of school age who were required to study their lessons at night. After she had made definite arrangements with Mrs. Hinson to move into the house on September 1, she and two of her children went to the house and *237 scrubbed the floors. While she was doing this she was notified by the defendant's lineman that the association was going to cut the lights off. She told the lineman that she was preparing to move into the house, and requested him to leave the lights on. But her request was disregarded. She then went to Clinton and applied for electrical service. She signed the application, which she was requested to sign, and paid the $5 deposit fee. But a few hours later she received a message from the defendant's manager that she could not have electric current on Mrs. Hinson's place and that her $5 deposit fee would be returned to her.
Mrs. McGuffee stated that the house in which they were living prior to the issuance of the temporary injunction was not on a school bus route, and she and her husband had to carry their children to school. But the house which they had rented from Mrs. Hinson was on a school bus route, and after they moved into that house the children rode to school on the school bus.
H.L. McGuffee testified that he made the trip to Clinton with his wife when she filed the application for electrical service and paid the $5 fee required by the office manager, which constituted a so-called membership fee. He also stated that after they had rented the house from Mrs. Hinson, he made arrangements with his nephew to help him move and hired a truck for that purpose.
Earl L. Phillips, the general manager of the defendant association, testified that the association was organized in 1938 and served a large part of Warren County, and also parts of several other counties. It owned 1825 miles of distribution lines and served 7300 customers. The association had served a former occupant of the house which the complainants had rented from Mrs. Hinson. No other power association had power lines running to the property. The witness stated that a suit for damages for the wrongful cutting of timber had been *238 filed by Mrs. Hinson against the association in the Circuit Court of Warren County, and he had issued instructions that no electrical service should be furnished to any person who occupied any part of the 27-acre tract of land owned by Mrs. Hinson so long as there was any controversy in the court between Mrs. Hinson and the association. The order was issued pursuant to an order of the board of directors. The witness also stated that he had issued a check for a refund to Mrs. McGuffee of the $5 membership fee which she had paid to the association on August 30, 1954. He stated that he alone was authorized to accept such membership fee, and that only the board of directors could accept applications for membership in the association. He stated that the only reason the association had refused to give the complainants electrical service was that Mrs. Hinson had filed suit against the association for the recovery of damages for the wrongful cutting of the timber.
On direct examination by the defendant's attorney, Phillips stated that the defendant association was incorporated under the "Electric Power Association Act", Chapter 184, Laws of 1936, and that it extended services only to persons who had been accepted for membership by the association. It was a nonprofit association, and had no fixed capital. The book value of its assets was $2,500,000, but at the time of the trial the association owed $1,200,000 to the R.E.A. The witness stated that neither he nor the board of directors had ever accepted Mrs. McGuffee's application for membership, and that Mrs. Alma Warren, who issued the receipt to Mrs. McGuffee on August 30, 1954, had no power to make contracts for the association. On further cross-examination the witness admitted, however, that Mrs. Warren had his permission to sign application receipts for the association; and in answer to a question propounded to him by the chancellor, he also admitted that the suit filed by Mrs. Hinson against the association did not involve any *239 question regarding the lines then in existence and serving the house referred to in Mrs. McGuffee's application.
At the conclusion of the evidence, the chancellor found that the defendant's manager did not have the right to deny membership in the association to the complainants because the complainants' landlord was in a controversy with the association over the landlord's claim for damages for the wrongful cutting of trees. The chancellor found that the complainant, Mrs. McGuffee, had made a deposit of $5 with the defendant to insure the electrical connection, and that the deposit had been accepted by the defendant's agent, who was authorized to accept the same; and that the defendant's refusal to recognize the complainant's membership in the association and its refusal to furnish electrical service to the complainants under the facts disclosed by the testimony of the witnesses was arbitrary, capricious, and without authority of law, and that the acts complained of were of such nature as to justify an award of punitive damages. The chancellor entered a decree making the injunction permanent and awarding damages to the complainants in the sum of $500 and attorney's fee in the sum of $250.
The first point argued by the appellant's attorney as ground for reversal on this appeal is that the chancellor erred in treating the appellant as if it were a public utility and in holding that the appellees were entitled to electrical service from the association as a matter of vested right and in requiring the appellant to furnish such service.
It is not necessary for us to determine here whether an electric power association such as we have here is a "public utility" within the purview of statutes regulating such utilities and subjecting them to the jurisdiction of a public service commission. The question that we have to consider here is, whether such corporation may arbitrarily reject the application for membership of persons *240 living in the area served by such corporation and in close proxmity to its distribution lines and refuse to supply electric energy to such persons solely because of the existence of a legal controversy between the electric power association and the applicants' landlord.
The answer to that question must be found in the provisions of the "Electric Power Association Act" itself.
The declared purpose of the statute, Sections 5463 et seq., Miss. Code of 1942, is to provide a method for the formation of "a corporation not organized for pecuniary profit for the purpose of promoting and encouraging the fullest possible use of electric energy by making electric energy available at the lowest cost consistent with sound economy and prudent management of the business of such corporations." Section 5464, Code of 1942. The statute provides that, "Except as hereinafter provided, the corporate purpose of each corporation formed hereunder shall be to render service to its members only. Any person may become and remain a member if such person shall use energy supplied by such corporation and shall comply with the terms and conditions in respect to membership contained in the bylaws of such corporation, which terms and conditions shall be nondiscriminatory. Any person who shall agree to use energy supplied by the corporation from an existing line or from a line the construction of which has been authorized or commenced by the corporation may be admitted to membership in the corporation prior to such use upon complying with the other terms and conditions with respect to membership contained in the certificate of incorporation or in the bylaws. The membership fee shall be fixed by the board of directors. * * *." Section 5472, Code of 1942. Among the enumerated powers conferred upon such corporations are the power to acquire, own and operate electric power systems for the generation, transmission or distribution of electric energy, and to furnish electric service in connection *241 therewith; "to use any right of way, easement or other similar property right necessary or convenient in connection with the acquisition, improvement, operation or maintenance of a system, granted by the state or any political subdivision thereof, provided that the governing body of such political subdivision shall consent to such use; and to have and exercise the power of eminent domain in the manner provided by the condemnation laws of this state for acquiring private property for public use, such right to be paramount except as to the property of the state or of any political subdivision thereof." Section 5474, Code of 1942. Such corporations are authorized "to contract with any person, Federal agency or municipality for the purchase or sale of energy and/or the acquisition of all or any part of any system, and in connection with any such contract to stipulate and agree to such covenants, terms and conditions as the board may deem appropriate, including covenants, terms and conditions with respect to the resale rates, financial and accounting methods, services, operation and maintenance practices and the manner of disposing of the revenues of the system operated and maintained by the corporation. Section 5474 (8), Code of 1942. And such corporations are authorized "to fix, maintain and collect fees, rents, tolls and other charges for services rendered."
It can be readily seen that corporations organized under the above mentioned statute are vested with many of the attributes of public service corporations. The right to exercise the power of eminent domain is conferred upon such corporations, and that right is limited by constitutional provision to cases where the property is to be taken for public use; and the question whether the contemplated use be public is a judicial question, to be determined without regard to legislative assertion that the use is public. Section 17, Mississippi Constitution, 1890. The State does not have the power to *242 authorize the taking of the private property of an individual without his consent for the private use of another, even on the payment of full compensation. 18 Am. Jur. pp. 658, 659, Eminent Domain, par. 34, and cases cited.
In the case of Bookhart v. Central Electric Power Cooperative, Inc., 219 S.C. 414, 65 S.E.2d 781, the Court held that statutes which created electric power cooperatives for the purpose of supplying electric energy and promoting and extending uses thereof in rural areas and which gave the power of eminent domain in the manner provided by law for the exercise of that power by corporations operating electric transmission and distribution system and which exempted cooperatives from the jurisdiction and control of the public service commission, manifested a legislative intention to make such cooperatives public service corporations; and that, where such statute limited such service to the members of such cooperatives, governmental agencies and subdivisions and other persons not in excess of ten per cent of the number of members, such limitation did not preclude such cooperatives from being public service corporations entitled to exercise the power of eminent domain, since such cooperatives had the implied obligation to make membership available without arbitrary or unreasonable limitation to all coming within the purview of the purpose for which they were created.
The service rendered by an electric power association, such as we have here, to the inhabitants of the areas in which it operates bears a striking resemblance to the service rendered by a municipal corporation engaged in furnishing electricity, gas or water to the inhabitants of the municipality. And this Court has held in several cases that a municipal corporation engaged in furnishing such service to its inhabitants must furnish such service upon a nondiscriminatory basis to all persons residing in the municipality who agree to pay *243 for such service and to comply with the rules and regulations adopted by the governing authorities of the municipality with reference thereto. See Burke v. City of Water Valley, 87 Miss. 732, 40 So. 820; Ginnings v. Meridian Water Works Co., 100 Miss. 507, 56 So. 450; Caston v. Huston, 139 Miss. 890, 104 So. 698; Yazoo City v. Birchett, 89 Miss. 700, 42 So. 569; Carnaggio Bros. v. City of Greenwood, 142 Miss. 885, 108 So. 141.
(Hn 1) We think that members of an electric power association organized under the provisions of the "Electric Power Association Act" and other persons living along the routes served by such association and readily accessible to its existing lines, who apply for membership in the association and agree to use electric energy supplied by the association, are entitled to have such electric service furnished to them upon a nondiscriminatory basis, just as the inhabitants of a municipality which operates an electric distribution system are entitled to have such service furnished to them upon a nondiscriminatory basis.
(Hn 2) The appellant's attorney lays great stress in his argument upon the clause in Code Section 5472, which provides that, "Except as hereinafter provided, the corporate purpose of each corporation formed hereunder shall be to render service to its members only." But that provision must be read along with the other provisions of the same section, including the provision that, "Any person may become and remain a member if such person shall use energy supplied by such corporation and shall comply with the terms and conditions in respect to membership contained in the bylaws of such corporation, which terms and conditions shall be nondiscriminatory," and the provision that, "Any person who shall agree to use energy supplied by the corporation from an existing line or from a line the construction of which has been authorized or commenced by the corporation may be admitted to membership in the corporation *244 prior to such use upon complying with the other terms and conditions with respect to membership contained in the certificate of incorporation or in the bylaws." These provisions of the statute were designed to make certain the accomplishment of the purpose for which such corporations are organized by making electric energy available upon a nondiscriminatory basis to the inhabitants of the areas which they propose to serve at the lowest cost consistent with sound economy and prudent management of the business; and such provisions were necessary to justify the delegation to such corporations of the power of eminent domain.
(Hn 3) We therefore hold that an electric power association, created under Chapter 184, Laws of 1936, and amendments thereto, Sections 5463 et seq., Miss. Code of 1942, having the power of eminent domain and enjoying the other privileges conferred on such corporations under the provisions of the act, by the acceptance of its charter assumes the obligation to render nondiscriminatory service to persons subscribing for such service who live in the areas served by such corporation and on the routes traversed by its distribution lines, and that any such person has a right to become and remain a member if such person shall use energy supplied by such corporation "and shall comply with the terms and conditions in respect to membership contained in the bylaws of such corporation, which terms and conditions shall be nondiscriminatory."
The appellant's attorney cites in support of his contention that the appellant was justified in refusing to furnish electric service to the appellees the cases of King v. Farmers Electric Coop., Inc. (1952), 56 N.W. 552, 246 P.2d 1041, and Sutton v. Hunziker (1954), 85 Idaho 395, 272 P.2d 1012. But the opinions rendered in those cases are not controlling in the case that we have here. The provisions of the New Mexico statute and the Idaho statute relating to the creation of electric *245 power associations and the rights of membership therein are unlike the provisions of our own statute; and the reason assigned by the power association for refusing to furnish electric service to the complaining party in each of those cases was entirely different from the reason assigned by the appellant in this case.
(Hn 4) The order of the board of directors of the appellant corporation adopted on January 10, 1945, which provided that "the manager shall be instructed not to render electric service to property while in litigation," was in our opinion unreasonable, arbitrary and discriminatory, and afforded no justification for the manager's refusal to supply electric energy for the appellees in this case on the ground that Mrs. Hinson had filed an action for damages against the appellant for the wrongful cutting of timber on her land. And we think there was no error in the action of the chancellor in holding that the appellees were entitled to have electric service restored in the dwelling house which they had rented from Mrs. Hinson.
(Hn 5) It is next argued that the chancellor erred in refusing to make certain specific findings of facts requested by the defendant at the conclusion of the evidence. But we think there is no merit in this contention. The chancellor was not required to make a specific finding that the defendant power association was not a public utility, or that the order adopted by the board of directors on January 10, 1945, undertaking to empower the manager to withhold service from property while the owner was in litigation with the association, had been applied without favor or partiality, or that Mrs. Warren was not authorized to make a contract on behalf of the association. For reasons already stated by us in this opinion the application of Mrs. McGuffee for electric service should not have been rejected by the association.
(Hn 6) Finally, it is argued that the chancellor erred in awarding to the appellees punitive damages and attorney's *246 fees on account of the wrongful refusal of the appellant to furnish such electric service to the appellees.
This assignment or error is well taken and must be sustained.
The complainants were entitled to recover compensatory damages. But the rule is well settled by the weight of authority that it is not a function of a court of equity to assess punitive damages in the absence of express statutory provisions, and a court of equity will assess actual damages only as ancillary to equitable relief. 19 Am. Jur. p. 125, Equity, par. 125; 30 C.J.S. p. 426, Equity, par 72. The rule thus stated was cited and approved by this Court in the very recent case of Wilborn v. Balfour et al., 218 Miss. 791, 67 So.2d 857, and in that case the Court also held that attorney's fees were not recoverable in a case of this kind.
The chancellor should have determined the amount of compensatory damages which the complainants were entitled to recover, and should have awarded judgment for that amount. Punitive damages and attorney's fees should not have been allowed.
The decree of the lower court is therefore affirmed as to the injunctive relief granted, but will be reversed as to the allowance of damages and attorney's fees; and the cause will be remanded for the assessment of compensatory damages only.
Affirmed in part and reversed in part and remanded.
Hall, Lee, Ethridge and Gillespie, JJ., concur.

ON MOTION TO DISSOLVE AND VACATE INJUNCTION
ETHRIDGE, J.
(Hn 7) Appellant has filed a motion to dissolve and vacate the injunction against it rendered by the chancery court and affirmed on appeal, requiring it to render *247 electric service to appellees. An attached affidavit reflects that appellees abandoned the premises in April 1955, owing the association a bill for electricity used. However, this Court in its judgment remanded the case to the chancery court for assessment of compensatory damages, so appellant should now apply to that court rather than here for whatever relief it is entitled to in this respect. For that reason the motion is overruled.
Motion to dissolve and vacate injunction overruled.
Hall, Kyle, Lee, and Gillespie, JJ., concur.