218 So.2d 592

**CENTRAL LOUISIANA ELECTRIC COMPANY et al.**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION et al.**

**CENTRAL LOUISIANA ELECTRIC COMPANY, Gulf States Utilities Company, Louisiana Power & Light Company, and Southwestern Electric Power Company**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION.**

Nos. 49374 and 49375.

Jan. 20, 1969.

Rehearing Denied Feb. 24, 1969.

Landry, Watkins, Cousin & Bonin, Jacob S. Landry, New Iberia, Taylor, Por-

ter, Brooks, Fuller & Phillips, Tom F. Phillips, Baton Rouge, Theus, Grisham, Davis, Leigh & Brown, Thomas W. Leigh, Monroe, Monroe & Lemann, Andrew P. Carter, Eugene G. Taggart, New Orleans, Wilkinson, Woods, Carmody, Meadows & Hall, Arthur R. Carmody, Jr., Shreveport, for plaintiffs and appellants.

Paul M. Hebert, Theo. F. Cangelosi, John Schwab, Robert L. Cangelosi, Baton Rouge, for intervenor-appellee.

Joseph H. Kavanaugh, Baton Rouge, for defendant-appellee.

BARHAM, Justice.

This is an appeal from a judgment rendered by the Nineteenth Judicial District Court for the Parish of East Baton Rouge affirming orders of dismissal by the Louisiana Public Service Commission of proceedings before it, and sustaining exceptions of no cause of action in a suit filed in that court.

In 1964 four private utility companies doing business in Louisiana filed a petition with the Louisiana Public Service Commission against Louisiana Electric Cooperative, Inc., seeking to enjoin the cooperative from the construction of an electric generating and transmission system or to require it to secure a certificate of public convenience and necessity for that construction. The plaintiffs alleged that the defendant was an electric cooperative or-ganized under LSA–R.S. 12:301 et seq., with 12 electric distribution cooperatives as members; that the Rural Electrification Administration had approved a loan to the defendant cooperative of $56,521,000.00 for construction of a generating and transmission system to serve the wholesale electric power requirements of its member cooperatives, and that the member cooperatives at that time were purchasing their electric power from the plaintiff power companies at wholesale for resale to their members and their other customers. The cooperative filed an exception of no right or cause of action and exceptions to the Public Service Commission's jurisdiction over it and over the subject matter of the proceedings.

Early in 1965 the Public Service Commission dismissed plaintiffs' petition, holding that the member cooperatives were not "customers" of the complaining power companies within the meaning of LSA–R.S. 45:123. On appeal the Nineteenth Judicial District Court reversed the commission's order and remanded the case for a hearing on the merits. During sporadic hearings on the merits, two pertinent decisions were rendered by the Louisiana Supreme Court: Louisiana Power & Light Co. v. Louisiana Public Service Com'n, 250 La. 596, 197 So.2d 638 (1967), and Central Louisiana Electric Co. v. Louisiana Public Service Com'n, 251 La. 532, 205 So.2d 389 (1968). On the basis of those cases and

for other reasons, the Public Service Commission then sustained the cooperative's exceptions and dismissed the petition pending before it. A second appeal was taken to the district court, and a new and separate but identical suit filed in that court was consolidated with the appeal for hearing. The district court affirmed the Public Service Commission's order sustaining the exceptions to the commission's jurisdiction, and sustained the exceptions of no cause of action filed in the suit before it.

Although various contentions are made before this court, the resolution of one issue will determine the matter. The cooperative is, as stated in the plaintiffs' petition, an electric cooperative organized under the Louisiana Electric Cooperative Act, LSA–R.S. 12:301 et seq., and the crucial issue is whether the Louisiana Public Service Commission has jurisdiction over such an electric cooperative.

The district court relied on the decisions in Louisiana Power & Light Co. and Central Louisiana Electric Co., supra, to arrive at its conclusion, saying in part: "We hold that insofar as statutory law is concerned, we can make no valid distinction between Louisiana Electric Cooperative, Inc. and those distribution cooperatives which the Supreme Court of Louisiana has ruled are not subject to the jurisdiction of the Louisiana Public Service Commission. * * *"

In argument before us the plaintiffs admitted that they cannot prevail in this case unless we overrule the Central Louisiana Electric Co. case and repudiate the language, if not overrule the holding, in the Louisiana Power & Light Co. case.

The Louisiana Power & Light Co. case was decided in March, 1967, with Mr. Justice McCaleb as the organ of the whole court. A rehearing was refused in May, but three justices dissented from the denial of a rehearing. Mr. Justice Hamiter, one of those three dissenters, was the author of the majority opinion in the Central Louisiana Electric Co. case, decided in December, 1967, which reaffirmed the reasoning of Louisiana Power & Light Co., supra. Mr. Justice Summers was the only dissenter. A rehearing in that case was denied in January, 1968. Thus within less than one year this court acted twice upon the same question presented here, and the exact issue was met squarely by this court in the Central Louisiana Electric Co. case only months before submission of the present case.

Although some of the language in the Louisiana Power & Light Co. case may have been dictum, this court said of that decision in the Central Louisiana Electric Co. case: "On this appeal by Central from the district court's judgment it asks that we reconsider and overrule our decision in the Louisiana Power and Light Company case, supra, wherein we held (among oth-

er things) that the provisions of LRS 45:-123, which require an electric public utility to obtain a certificate of public convenience and necessity from the Commission before serving customers already receiving service from another electric public utility, do not apply to electric cooperatives. But our further consideration of that case convinces us that the decision therein was correct and is amply supported by the reasons set out in the opinion. *In fact, those reasons are well articulated and documented; and we reaffirm them.*" (Emphasis supplied.)

Finally this court concluded in the Central Louisiana Electric Co. case: "Therefore, our conclusion is that electric cooperatives, assuming arguendo that they are 'public utilities' of some sort and as such might be placed by the Legislature either partially or wholly under the authority of the Commission, are not 'electric public utilities' or 'other utilities' envisioned by the language and within the intendment of Article VI, Section 4 of the Louisiana Constitution; and that, *inasmuch as the Legislature has not exercised its prerogative to give the Commission control of them,* the latter is without jurisdiction over their operations." (Emphasis supplied.) ·

The plaintiffs have made strong and articulate argument to support their theory that these holdings should be overruled, and Mr. Justice Summers in his dissents in the prior cases has well stated their position. Nevertheless, in the face of two strong and recent decisions by this court within a brief period of time, and particularly in view of the pronouncement that the matter was for legislative attention, to speak now in a contrary vein would weaken the stability of the law and could properly subject this court to the criticism of usurping the functions of the legislative and executive arms of government.[1] Our present statutory law and jurisprudential pronouncements make it clear that electric cooperatives are not subject to the jurisdiction of the Louisiana Public Service Commission.[2]

On the basis of the holdings in Louisiana Power & Light Co. v. Louisiana Public Service Com'n, supra, and Central Louisiana Electric Co. v. Louisiana Public Service Com'n, supra, the judgment of the district court affirming the dismissal of the power companies' petition before the Lou-

1. The Legislature considered this matter after our decisions and passed a bill placing electric cooperatives under the jurisdiction of the Louisiana Public Service Commission. This bill was vetoed by the Governor, however, and a reconsideration of it by the Legislature failed to receive enough votes to override the veto.

2. The writer of this opinion, who was not a member of the court when these decisions were rendered, has never expressed a view of their correctness, and need not do so now since they will be applied as a matter of law.

isiana Public Service Commission and dismissing the proceedings in that court is affirmed. Plaintiffs are cast for all costs in these proceedings.

HAMLIN, Justice (dissenting).

It is my studied conclusion that the district court erred when it affirmed the Louisiana Public Service Commission's order sustaining exceptions to the Commission's jurisdiction and exceptions of no cause of action filed by the defendant electric cooperative. I respectfully dissent from the findings of the majority opinion of this Court and from the majority decree which affirmed the judgment of the district court.

I earnestly believe that due process can only be accomplished herein by the *hearing of evidence* to determine the correctness vel non of the plaintiffs' petition. They allege that the defendant cooperative is in truth and in fact a public utility which should be regulated by the Louisiana Public Service Commission. Art. VI, Sec. 4, La.Const. of 1921; cf. LSA–R.S. 45:121. They allege in substance that LSA–R.S. 12:326 does not apply to the defendant electric cooperative.

It is a fact that neither the Commission nor the district court ever reached any consideration of the merits, i. e., whether or not under the facts jurisdiction over this cooperative is vested in the Commission.

The point raised is that if, after the hearing of evidence, a finding is made that the defendant cooperative is in truth and in fact a public utility, the Commission would then have jurisdiction. This contention, in my opinion, must be answered.

In brief filed in this Court on October 14, 1968, counsel for plaintiffs give cogent reasons for the overruling of the above exceptions and the remanding of the matter to the district court and ultimately to the Commission for the hearing of evidence. They allege in substance, and I agree with their allegations, that the following should be considered:

(1) The power conferred on the defendant cooperative by its charter;

(2) The adoption of the provisions of LSA–R.S. 12:301 et seq. as the cooperative's charter, as permitted by LSA–R.S. 12:306 [subd.] C;

(3) The following questions to determine whether or not the defendant cooperative is really a cooperative or a public utility:—

(a) Does it deal with a commodity in which the public is generally held to have an interest?

(b) Will it be in actual or potential competition with other corporations whose business is clothed with public interest?

(c) Is the transmission of electric power by LEC a public purpose?

(d) Will it serve a substantial segment of the public?

(e) Does it propose to accept substantially all requests for service?

(f) May it arbitrarily reject the application for membership of persons in the same position as that of its members?

(g) Will it acquire and utilize franchises for the service to municipalities of the commodity in which it proposes to deal?

(h) Does it have the right to use public roads and public places for the construction of the facilities needed to distribute the commodity in which it deals?

(i) Does it enjoy the power of eminent domain?

I am constrained to believe that if, after the hearing of evidence, the facts show that the defendant cooperative is acting in a manner similar to that of a public utility and conducting its business in a similar form, the cooperative, despite its designation as a cooperative, should be subject to the regulation and jurisdiction of the Commission. It is an axiom of the law that no one can do indirectly what he cannot do directly.

It is true that previously we have considered the two cases discussed in the majority opinion and concluded that the matter is one for the Legislature. How-

ever, I believe that it is now time for this Court to open the door for a determination as to whether or not there is an evasion of the laws of this State. If we do not do so, we are encouraging the formation of institutions which will give themselves the name or title of "Cooperative," and under such name or title engage in unfair competition without experiencing any power of regulation. Reason dictates and justice demands that such institutions should not be allowed to do this.

I respectfully believe that the instant matter should be remanded for the consideration of the facts as above set forth.

SUMMERS, Justice (dissenting).

Central Louisiana Electric Company, Gulf States Utilities Company, Louisiana Power and Light Company and Southwestern Electric Power Company, investor-owned utilities, instituted these proceedings before the Louisiana Public Service Commission on September 30, 1964 against the defendant, Louisiana Electric Cooperative, Inc., an electric generating and transmission cooperative organized under the provisions of the Electric Cooperative Law, La.R.S. 12:301 et seq., by twelve electric distribution cooperatives, who are: Bossier Rural Electric Membership Corporation, Beauregard Electric Cooperative, Inc., Claiborne Electric Cooperative, Inc., Concordia Electric Cooperative, Inc., Jeffer-

son Davis Electric Cooperative, Inc., Northeast Louisiana Power Cooperative, Inc., Pointe Coupee Electric Membership Corporation, South Louisiana Electric Cooperative Association, Teche Electric Cooperative, Inc., Valley Electric Membership Corporation, Washington-St. Tammany Electric Cooperative, Inc., and Dixie Electric Membership Corporation.

The petition of the investor-owned utilities prayed that the Louisiana Public Service Commission cite defendant Louisiana Electric Cooperative, Inc., to show cause why it should be permitted to construct its proposed electric generating stations and transmission lines within the State. Further, the petition prayed that Louisiana Electric Cooperative, Inc., show cause whether it should be issued a certificate of public convenience and necessity, and that, after hearing, Louisiana Electric Cooperative, Inc., be ordered to desist its efforts to construct the proposed generating and transmission facilities.

In its petition to the Public Service Commission the investor-owned utilities alleged that they have an aggregate of over three million kilowatts of electricity from generating stations spread over the State, and, as parties to pooling and interchange agreements, they provide net generating capabilities aggregating in excess of seven million kilowatts. In general, they aver that their facilities are capable of furnishing the present and future needs of all

twelve distribution cooperatives who are the members of and who organized Louisiana Electric Cooperative, Inc. The petition sets forth that these same twelve electric distribution cooperatives "consume" electricity and are the largest "customers" of petitioners, the investor-owned electric utilities, and are being furnished electricity at the lowest rate charged any customers.

Louisiana Electric Cooperative, Inc., plans to construct an electric generating station and more than 1,600 miles of transmission lines costing approximately $56,-521,000, with funds derived from a loan from the Rural Electrification Administration, according to the petition. It is alleged that this project is not in the public interest or to the best interest of the cooperative's members or customers, for all of the customers to be served by the proposed generating and transmission facilities of the newly organized cooperative are now being served by petitioners, the electric service is adequate and the rates are reasonable. Furthermore, it is alleged, Louisiana Electric Cooperative, Inc., will not be able to produce electric energy and power as economically as it is now being sold to its members by petitioners, nor will the system constructed by the cooperative be as reliable as that now made available by petitioners. Thus, petitioners aver, the generating station and transmission lines proposed by Louisiana Electric Coopera-

tive, Inc., will be uneconomical and will constitute a duplication of the existing facilities of petitioners. This duplication, it is averred, is in contravention of the principle announced in La.R.S. 45:123 [1] that an electric public utility shall not render or extend its electric services or facilities to customers already receiving electric service from another electric public utility unless the service already being rendered is inadequate, or the rates are unreasonable; and, in addition, the proposal of Louisiana Electric Cooperative, Inc., is contrary to the public policy of the State, which, as partially expressed in La.R.S. 45:123, is to encourage and develop coordinated statewide electrification based upon a planned economy.

To this petition Louisiana Electric Cooperative, Inc., filed a "Peremptory Exception of No Cause or Right of Action and Exception to the Jurisdiction". The exception is based upon the contention that, as an electric cooperative under La.R.S.

12:326,[2] Louisiana Electric Cooperative, Inc., is exempt in all respects from the jurisdiction of the Commission, and for that reason is not required to obtain a certificate of public convenience and necessity. The exception further averred that Louisiana Electric Cooperative, Inc., is not a "public utility" as that term is used and understood in the constitution and statutes of Louisiana (La.Const. art. 6, § 4 and La.R.S. 45:121 and 45:123) [3] and, for this additional reason, it is not subject to the jurisdiction of the Commission.

Another reason assigned by Louisiana Electric Cooperative, Inc., for its position that it cannot be made to answer to Commission jurisdiction is that the proposed extension of electric service to the distribution cooperatives will not constitute an extension of facilities to customers already receiving electric service because the distribution cooperatives are not "customers" of the investor-owned utilities as that term

---

1. La.R.S. 45:123 provides: "In order to encourage a further development of co-ordinated statewide electrification based upon a planned economy, an electric public utility shall not render or extend its electric services or facilities to customers already receiving electric service from another electric public utility without first obtaining a certificate of public convenience and necessity from the Louisiana Public Service Commission. The Commission shall grant such a certificate only in the event that the electric service already being rendered is inadequate, or that the rates for such electric service are unreasonable."

2. La.R.S. 12:326 provides: "Cooperatives transacting business in this state pursuant to this Part shall be exempt in all respects from the jurisdiction and control of the Public Service Commission of this state."

3. The full text of La.Const. Art. 6, Sec. 4, is quoted in the body of this opinion infra. For the full text of La.R.S. 45:123 see footnote 1.

   La.R.S. 45:121 provides: "The term 'electric public utility' as used in this Chapter means any person furnishing electric service, within this state, the parish of Orleans excepted."

is employed in La.R.S. 45:123, and, because they are not "customers", an essential prerequisite to invoking Commission jurisdiction under La.R.S. 45:123 is absent.

It is alleged, moreover, that the Commission has never exercised regulatory control over cooperatives and the constitutionality of the statutes exempting cooperatives has not been attacked by petitioners.[4]

Oral argument was heard on these exceptions on November 17, 1964 but no evidence was received, the Commission and the parties apparently treating all the exceptions as one exception of no right or cause of action. At the conclusion of the hearing, the parties submitted briefs and the Commission ruled on March 29, 1965 that the twelve distribution cooperatives were not "customers" of the investor-owned utilities within the purview of La. R.S. 45:123; and, therefore, the complaint of the investor-owned utilities should be dismissed because the proposed sale of electricity to these distribution cooperatives by Louisiana Electric Cooperative, Inc., would not amount to a taking of customers which is a basis for invoking the Commission's jurisdiction under La.R.S. 45:123.

They were not customers, according to the ruling, because they were buying wholesale and for resale and not for their own consumption. Therefore, since these distribution cooperatives were not customers of the investor-owned utilities, Louisiana Electric Cooperative, Inc., could sell to them without establishing that the electric service already being rendered was inadequate or that the rates were unreasonable as required by La.R.S. 45:123.

From this order dismissing its complaint, the investor-owned utilities appealed to the Nineteenth Judicial District Court under pertinent statutory authority. Louisiana Electric Cooperative, Inc., intervened and filed exceptions which were substantially identical with those filed theretofore with the Commission. After due consideration, the district court was of the opinion that the Commission was in error and, accordingly, the order of the Commission was set aside and the suit remanded for further proceedings in accordance with law.

In his reasons for judgment, the judge of the district court explained that the Commission, for the purpose of determin-

4. The exceptions further set forth that petitioners are also seeking to deprive Louisiana Electric Cooperative, Inc., of its loan approved by the Administrator of the Rural Electrification Administration, which petitioners have no standing to contest. I will not discuss the approval or disapproval of the loan, however, for I do not consider that question to be at is-

sue until there is a determination that the Public Service Commission has jurisdiction over the cooperative, in which event the approval of the Commission would be necessary under 7 U.S.C.A. § 904. Also, see Rural Electrification Administration v. Central Louisiana Electric Company, Inc., 354 F.2d 859 (5th Cir. 1966).

ing the exception of no cause of action, was bound to accept as true all of the allegations of the petition that the twelve distribution cooperatives were "customers" of the investor-owned utilities and "consumed" a considerable portion of electricity they produced. A ruling that the distribution cooperatives were not "customers", therefore, disregarded the plain language of the petition and was contrary to the assumption implicit in the exception that all well-pleaded facts in the petition must be considered as proven for the purposes of the exception.

When the matter again reached the Commission, Louisiana Electric Cooperative, Inc., filed its answer joining all issues. At this time a pretrial conference was held to determine the scope of the trial on remand, at which petitioners took the position that the effect of the ruling of the district court was to overrule the exceptions and the case should be fully tried on its merits with the Commission hearing evidence on petitioner's allegations that the proposed generation and transmission facilities would: (1) be contrary to the public interest; (2) be uneconomical; (3) constitute a duplication of existing facilities; and (4) be contrary to the State's public policy. Whereas, Louisiana Electric Cooperative advanced the untenable argument that the trial should be fragmented and only evidence concerning whether the distribution cooperatives were

"customers" of the investor-owned utilities should be considered for a decision on that question would be dispositive of the entire case. No order was issued as a result of the pretrial hearing, and no agreement was reached defining the issues.

Louisiana Electric Cooperative, Inc., then filed a "Peremptory Exception to the Commission's Jurisdiction of the Subject Matter" alleging again that the twelve distribution cooperatives Louisiana Electric Cooperative proposed to serve were not "customers" of the investor-owned utilities and, even if they were, Louisiana Electric Cooperative was not a "public utility" as that term was used in La.R.S. 45:123.

In hearings commenced on May 23, 1966, continued on January 25, 26, and February 27, 1967, the Commission heard evidence offered by Louisiana Electric Cooperative in support of the exceptions. At the insistence of Louisiana Electric Cooperative, Inc., and upon their repeated objections to other evidence, the evidence, by ruling of the Commission, was confined to whether the twelve distribution cooperatives were "customers" as that term is used in La.R.S. 45:123. When hearings were discontinued on February 27 exceptor had not rested, petitioners had not completed cross-examination of exceptor's witnesses whose testimony had been offered on the narrow issue of the customer status of the distribution cooperatives, and petitioners had been offered no opportunity to

present evidence to controvert that offered by the exceptor. Counsel were instructed at that hearing, however, to file briefs directed to the question of whether Louisiana Electric Cooperative, Inc., is a "public utility" within the contemplation of La. R.S. 45:123.

On April 13, 1967 counsel for Louisiana Electric Cooperative, Inc., brought to the Commission's attention the decision of this Court which had recently been rendered on March 27, 1967 in the matter entitled Louisiana Power and Light Company v. Louisiana Public Service Commission, 250 La. 596, 197 So.2d 638 (1967) and suggested in its brief that the Commission should, upon the authority of that decision, reinstate its previous order dismissing these proceedings but on the broader ground that Louisiana Electric Cooperative, Inc., was not a public utility and was exempt from Commission jurisdiction.

At a business and executive session of the Commission held on June 26, 1967 "Exceptions to the Jurisdiction" filed by Louisiana Electric Cooperative were sustained and the complaint was dismissed. An application for rehearing was made to which was attached a substantial number of documents detailing some of the evidence petitioners were prepared to elicit. The application was denied after which the investor-owned utilities appealed again to the Nineteenth Judicial District Court, and filed a separate but identical suit as a new mat-ter, in which Louisiana Electric Cooperative again intervened and excepted. The suits were consolidated and on March 29, 1968 the district court maintained the exception of no right or cause of action, held that the Commission had no jurisdiction, sustained the Commission's order and dismissed the suit. This appeal followed on April 2, 1968.

By its decision today the Court affirms the district court judgment and relies on the decisions in Louisiana Power & Light Company v. Louisiana Public Service Commission, 250 La. 596, 197 So. 2d 638 (1967) and Central Louisiana Electric Company v. Louisiana Public Service Commission, 251 La. 532, 205 So.2d 389 (1968). I am of the opinion that the decision today, which simply affirms the trial court by citing these two cases and without giving additional reasons, and the decisions in the two cases relied upon, in which I dissented, are all patently erroneous and should be overruled. A flagrant disregard of the constitution is involved here as it was in the other two cases and this additional dissent is, therefore, indicated, in an effort to right what I consider to be a grievous wrong.

The first opinion rendered by this court was Louisiana Power & Light Company v. Louisiana Public Service Commission, supra. The reasons assigned in that case for holding that electric cooperatives are not public utilities are "(1) because these co-

operatives, operating under the Rural Electrification Act (7 U.S.C.A. sec. 901 et seq.) were not in existence as such in 1936, and, hence, were not intended to be public utilities as defined by Act 254 of 1936; (2) because Act 266 of 1940 (now R.S. 12:301–12:330) under which the electric cooperatives are created specifically excepts, in R.S. 12:326, cooperatives transacting business in the State from the jurisdiction and control of the Public Service Commission and (3) because Sections 1 and 2 of Act 254 of 1936 (R.S. 45:122 and 45:123) make it clear that the Legislature was referring only to public utilities regulated by the Public Service Commission in its definition set forth in R.S. 45:121."

In most states legislative enactments are the authority by which commissions are created exercising functions generally comparable to those of the Louisiana Public Service Commission. Usually these legislative acts define in lengthy detail the character and extent of the jurisdiction, functions and responsibility of the bodies thus created. By contrast the broad constitutional grant of power to the Louisiana Commission is brief indeed. Other than the provisions relating to organization and procedural matters, the authority, jurisdiction and responsibility of the Commission is contained in Section 4 of Article VI of the Constitution of 1921 in these words:

"The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all common carrier railroads, street railroads, interurban railroads, steamboats and other water craft, sleeping car, express, telephone, telegraph, gas, electric light, heat and power, water works, common carrier pipe lines, canals, (except irrigation canals) and other public utilities in the State of Louisiana, and to fix reasonable and just single and joint line rates, fares, tolls or charges for the commodities furnished, or services rendered by such common carriers or public utilities, except as herein otherwise provided.

The power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by the common carriers and public utilities hereby, or which may hereafter be made subject to supervision, regulation and control by the Commission. The right of the Legislature to place other public utilities under the control of and confer other powers upon the Louisiana Public Service Commission respecting common carriers and public utilities is hereby declared to be unlimited by any provision of this Constitution."

This broad and comprehensive grant of jurisdiction and power to the Commission is unmistakable—it would be difficult to formulate a more sweeping or all-inclusive

grant dealing with the authority and responsibility of regulating public utilities. Within the sphere of the responsibility thereby imposed and the jurisdiction thus conferred, the Commission is only limited by the due process clauses of the state and federal constitutions.

Careful reading of the section discloses an intention that the powers granted to the Commission be self-executing making additional legislative sanction unnecessary. A fundamental proposition to be reckoned with in this case holds that when powers and authority are conferred by the constitution they may not be withdrawn in any degree by the legislature. On the other hand, this section recognizes the right of the legislature to augment those powers by express language in the very section which confers them. Greater Livingston Water Co. v. Louisiana Public Service Commission, 246 La. 273, 164 So.2d 325 (1964); Knight, The Louisiana Public Service Commission, 16 Tul.L.Rev. 1 (1941).

Nothing in the language of the section would permit the conclusion to be drawn that the Commission can limit its own jurisdiction, functions or duties, for the language of the constitution makes it plain that the Commission "shall have and exercise all necessary power and authority to supervise, govern, regulate and control" *all* public utilties therein enumerated. Thus by Article VI, Section 4, a constitutional mandate charges the Commission in un-

mistakable terms with broad duties and responsibilities it "shall" exercise.

Accepting the facts which were pleaded by petitioners in their complaint to the Commission as established, for the purpose of the exception of no cause of action, which was sustained by the Commission and the district court, we find it is alleged that the investor-owned utilities are furnishing electricity to the twelve distribution cooperatives at the lowest rates charged to any customers, the distribution cooperatives are some of the largest customers of petitioners and substantial reduction in rates have been offered the twelve distribution cooperatives. It must be assumed from the pleadings that Louisiana Electric Cooperative, Inc., is about to construct generating and transmission facilities which will be a needless expense and duplication against the interest of the public generally who must bear the burden of the waste. It is an alleged fact, also, that the proposed construction will be inimicable to the interest of the cooperative's customers or members because the cooperative will not be able to produce the electric energy and power as economically as it is produced and sold by the investor-owned utilities, nor will the service be as reliable.

These facts considered in the light of Article VI, Section 4, of the Constitution and the augmented authority contained in La.R.S. 45:123 make it abundantly clear that the complaint states a case properly

cognizable within the Commission's jurisdiction under the constitution and statutes. This case, therefore, presents allegations establishing unmistakably that the proposed investment of the cooperatives and the existing investments of the investor-owned utilities will be seriously jeopardized by the proposal of the cooperative. At the very least the allegations present a picture of needless waste and duplication, the cost for which will ultimately be borne by the consuming public in the form of higher rates and reduced service. This is the very situation which requires supervision, regulation and control as contemplated in the constitution. This is a case falling directly within the cognizance of the Commission, whose constitutional authority "shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered" by the public utilities. Moreover, the subject matter presented by the pleadings requires an interpretation of the policy expressed in La. R.S. 45:123, that is, this is a case where the development of electric service in Louisiana has reached a point where it must be determined whether the "planned economy" concept contemplates overall planning or only planning insofar as the investor-owned utilities are concerned. The facts alleged also present a case which requires a determination of the applicability of the prohibition contained in La.R.S. 45:123 that "an electric public utility shall not render or

extend its electric services or facilities to. customers already receiving electric service from another electric public utility" except "in the event that the electric service already being rendered is inadequate, or * * * the rates for such electric service are unreasonable."

Louisiana has long been in the process of fostering the extension of electric service to consumers within its borders, and until recently there was rarely a need for regulation between the utilities because anxious customers were available to use all facilities which could be financed and constructed. Primarily the Commission has functioned in this area to protect customers by regulating the rates charged by the investor-owned utilities. For some time, however, the development of the electric industry has progressed to the point where it can safely be said that 99% of existing needs are being served. At this time the problem is no longer a question of expanding facilities to meet the demands of prospective customers; rather, the problem is primarily one of regulating the relations between existing facilities vying for dominance in the field. Of course, the Commission is the properly constituted body to perform this task of regulation and, in the language of La.R.S. 45:123, "coordinate" normal growth and prevent the chaos attending unnecessary duplication. and waste which would inevitably be borne by the consuming public. It occurs to me, too, that a special

need for Commission regulation of the co-operatives is indicated by the pertinent constitutional and statutory authority, where one is a private enterprise and the other is, in fact, subsidized by low interest government loans and special tax exemptions. See La.R.S. 12:325. The two undertakings are so unequally based that both cannot survive in a competitive atmosphere.

The Congress of the United States, in enacting the Rural Electrification Act (7 U.S.C.A. § 901 et seq.) provided in Section 904 thereof that "no loan for * * * any generating plant shall be made unless the consent of the State authority having jurisdiction in the premises is first obtained." Louisiana, therefore, has a state agency to consider the advisability of the proposed loan—the Public Service Commission; and Congress felt the need for this local approval from the very nature of the activities which these loans would support. It was felt by the Congress that the local "state agency" would determine if construction of a proposed electric generating station was in keeping with its intent that these cooperatives not be in competition with private enterprise. This intent of the Congress is made abundantly clear from the following language of Hon. Sam Rayburn when he spoke in support of rural electrification before the House of Representatives on April 9, 1936:

"May I say to the gentlemen that we are not, in this bill, intending to go out

and compete with anybody. By this bill we hope to bring electrification to people who do not now have it. This bill was not written on the theory that we were going to punish somebody or parallel their lines or enter into competition with them. It was our thought that in the States where electricity is now generated and distributed the laws of that State would control the rates. May I say further that the Rural Electrification Administration will have nothing whatever to do with the rates that may be fixed in these communities, for the simple reason that these matters will be controlled by State law." 80 Congressional Record, p. 5283. See also 80 Congressional Record pp. 2751, 2752, 3305, 3306 for statements by Congressmen McNary, Norris, King and Walsh to the effect that the primary and only purpose of the act was to take care of farmers who did not have electricity and that there would be no competition with private plants.

Against this overwhelming need for the Commission to exercise jurisdiction in this matter under the facts alleged, the mandate of the constitution and the public policy of the State, Louisiana Electric Cooperative has interposed the defense that cooperatives in this state under La.R.S. 12:326 "shall be exempt in all respects from the jurisdiction and control of the Public Service Commission", and jurisdiction of the Commission is denied by the legislature because the co-

operative is not a "public utility" which can be regulated, according to La.R.S. 45:1161 (1), which provides:

"* * * *'Public utility' means any person, public or private, subject to the general jurisdiction of the commission *but not including* carriers by rail, water, electric or motor vehicles or pipe lines, or public utilities municipally owned or operated or *electric properties owned or operated by rural cooperatives.*"

In partial support of their position, the cooperative argues that the framers of the Constitution of 1921 did not intend that Article VI, Section 4, should reach all electric public utilities, whether or not of a form then in existence; that cooperatives were not authorized by Louisiana law in 1921 and, therefore, Article VI, Section 4, of the Constitution does not affect cooperatives.

The contention that La.R.S. 12:326 and La.R.S. 45:1161(1) exempt the cooperative from Commission jurisdiction must be resolved in light of the fundamental and elementary principle that the authority granted to the Commission in the constitution cannot be taken away in any degree by the legislature. Accepting this proposition as settled, what is the argument which is advanced to circumvent it? It must either be that the constitution does not, in the first place, confer plenary jurisdiction upon the Commission, or it must be that the grant is

unclear and the legislation exempting cooperatives removes the ambiguity.

It is fair to conclude from the record and briefs that the cooperative's argument does not deny the plenary authority of the Commission granted by the constitution or the force of La.R.S. 45:121, enacted originally in 1936, which provides that "electric public utility" shall mean any person furnishing electric service within the State. The argument is urged, however, that those enactments do not affect the cooperative because of the statutory exemptions and the further fact that cooperatives were not authorized by the law of this State until Act 266 of 1940 (La.R.S. 12:301–12:330) was enacted and, because they did not exist in 1921 or 1936, they were not contemplated by the constitutional enactment of 1921 or La.R.S. 45:121 originally enacted in 1936. This argument might be tenable if the situation were reversed, that is, it would comport with accepted principles of constitutional and statutory interpretation to argue that if the cooperatives were in existence at the time of the constitutional and legislative enactment those enactments could have no retroactive effect to change the obligations of the cooperatives already in existence. But it is not in harmony with any accepted principle of constitutional interpretation to argue that a 1940 law authorizing cooperatives enacted with full knowledge of an existing constitutional requirement enacted in 1921 can effectively be read in total dis-

regard of that constitutional requirement. Are we to say, for instance, since the recently enacted incorporation law, that the new type corporation authorized thereby was not contemplated in 1921 when the constitution was enacted, therefore, Article VI, Section 4, shall have no application to utilities incorporated under this new law? The answer, of course, is obvious. Purported exemptions of cooperative utilities from Commission regulation contained in La.R.S. 12:326 and La.R.S. 45:1161(1) are, therefore, repugnant to the constitution and ineffective. All forms of electric utilties, therefore, are subject to regulation by the Commission.

A question of fact is presented by the contention that Louisiana Electric Cooperative, Inc., is not a public utility. Dairyland Power Cooperative v. Brennan, 248 Minn. 556, 82 N.W.2d 56 (1957). Aside from the unmistakable definition contained in La.R.S. 45:121 that the term electric public utility "means any person furnishing electric service, within this state, * * *," certain criteria have evolved from practical experience, from the statutory law and from the jurisprudence which aid in the resolution of this problem.

First, it may be asked, does the entity in question deal with a commodity in which the public is generally held to have an interest? This question arises from the very nature of the term "public utility" which is sought to be defined. The public's interest in electric service is made manifest when the constitution declares that the Commission shall regulate "electric light, heat and power". And this cooperative is unmistakably clothed with the power to "(g)enerate, manufacture, purchase * * * and transmit electric energy * * *" (La. R.S. 12:303(4)) a commodity in which the public has declared its interest by enacting Article VI, Section 4, of the Constitution. See Natural Gas Service Co. v. Serv-Yu-Cooperative, 70 Ariz. 235, 219 P.2d 324 (1950). And, of course, the almost universal dependence of the public upon electricity in this State makes the interest of the public obvious.

Second, it is pertinent to ask if the cooperative will be in actual or potential competition with other organizations or businesses affected with a public interest? The answer is readily supplied by the definition of a cooperative's powers appearing in La.R.S. 12:303(4); these include the authorization to "distribute, sell, supply, and dispose of electric energy to its members, to governmental agencies and political subdivisions, and to other persons"—that is to say, to the same consumers who are presently purchasing from the investor-owned utilities who petition for a coordination or regulation of this conflict. As a matter of fact, the record definitively establishes that this same cooperative has solicited any number of municipal corporations now being served by petitioners with a view to

serving them with electric energy. If this competition is to exist, the competing furnishers of electricity must all be subject to Commission regulation; it would be palpably unjust to subject the investor-owned utilities to regulation and exempt the cooperatives—no such disparate system is envisioned in the constitution. See Natural Gas Service Co. v. Serv-Yu-Cooperative, supra.

Third, in determining whether the cooperative is a public utility it is pertinent to ask if the transmission of electricity will serve a public purpose. Aside from what has already been said, since the organization of the cooperative is authorized "for the purpose of supplying electrical energy and promoting and extending the use thereof" (La.R.S. 12:301) and the term "electric public utility" is defined to mean "any person furnishing electric service" (La.R.S. 45:121), the undoubted public purpose is a matter of legislative definition. For the designation of an entity as a public utility presupposes that a "public purpose" is to be served. I note from the record that thousands of customers are served by the distribution cooperatives, and, through these distribution cooperatives, the same consumers will be served by Louisiana Electric Cooperative, Inc., demonstrating that a substantial segment of the public is involved in the service to be rendered by Louisiana Electric Cooperative, Inc., and reinforcing

the view that a public purpose is to be served by the cooperative.

Fourth, does the Louisiana Electric Cooperative propose to accept substantially all requests for service, that is, will its service be indiscriminately available to the public at large? Although representing that its service will be limited to its members, who are the twelve distribution cooperatives, it must be borne in mind that each of these twelve distribution cooperatives, in turn, serve thousands of consumers. In addition, Louisiana Electric Cooperative, Inc., is actively engaged in soliciting the customers now being served by the investor-owned utilities. Further, like any other public utility, the courts have held that cooperatives which enjoy the power of eminent domain and other privileges because they are affected with a public purpose, by accepting these benefits, assume the obligation to render non-discriminatory service to persons subscribing for such service who live in the areas served by such cooperatives and on the routes traversed by its distribution lines. Capital Electric Power Association v. McGuffee, 226 Miss. 227, 83 So.2d 837, 84 So. 2d 793, 56 A.L.R.2d 403 (1955) and La. R.S. 12:301 et seq. As our Commission has recognized in the past, membership in cooperatives is actually irrelevant for no significant requirement is made over and above a non-member status; membership is, in my view, simply a right which users

may avail themselves of if they choose—it is not exclusive.

Fifth, sometimes a furnisher of electric service and power is held to be a public utility if the furnisher acquires and utilizes a franchise from a municipality prior to rendering service. Jersey Central Power & Light Co. v. Tri-County Rural Electric Co., Inc., 38 PUR (N.S.) 48 (1941). In Louisiana cooperatives are authorized to provide service to political subdivisions (La.R.S. 12:303(4)) and Louisiana Electric Cooperative, Inc., has actively solicited the right to serve municipalities now served by petitioners, hence, since service to municipalities is almost universally based upon franchise agreements, it may be assumed that Louisiana Electric Cooperative, Inc., proposes to enter into franchise agreements with municipalities either directly or through its member distribution cooperatives.

And finally, without declaring these tests to be exclusive, whether a furnisher of services or commodities to the public has a right to use the public roads and places and has the right of expropriation or eminent domain are factors which have been considered in determining whether the furnisher of services or commodities is a public utility. In this State cooperatives have both rights; La.R.S. 12:303(12) grants the right of expropriation which by the constitution of this State cannot be exercised but for a "public purpose" La.Const. art. 1, § 2 (1921). Either the cooperative use of ex-

propriated rights of way is for a public purpose and they are public utilities, or they are not entitled to expropriate because their activities are not associated with a public purpose. Because the statute gives cooperatives the right to expropriate, I must believe the lawmaker considered cooperatives affected with a public purpose.

And La.R.S. 12:303(11) provides that cooperatives enjoy the right to:

"Construct, maintain and operate electric transmission and distribution lines along, upon, under and across all public thoroughfares, including without limitation, all roads, highways, streets, alleys, bridges and causeways, and upon, under and across all publicly owned lands, subject, however, to the requirements in respect to the use of such thoroughfares and lands that are imposed by law; and, provided, that such construction and operation shall not interfere with the use and occupancy thereof by *other public utilities.*" (Emphasis added.)

The same rationale applies to this grant of the right to use the public streets and ways which applies to the right to expropriate. Either the cooperative's use of the public ways is for a public purpose or it cannot use those ways. Alabama Power Company v. Cullman County Electric Membership Corp., 234 Ala. 396, 174 So. 866 (1937). Inasmuch as the statute grants the right to use the public ways, the conclusion must follow that its use by the cooperative

is for a public purpose and because a public purpose is involved the cooperative is a public utility, and, by likening the cooperative to "other public utilities" the legislative intent that the cooperative should be considered as a public utility is demonstrated.

By all of these tests the Louisiana Electric Cooperative, Inc., is a public utility.

No authority appears in briefs to sustain the contention that Louisiana Electric Cooperative, Inc., though taking the distribution cooperatives away from the investor-owned utilities, will not be taking "customers" because those distribution cooperatives buy electric energy only at wholesale for resale. At the outset, I am not aware that the word "customer" relates only to an ultimate consumer. Instead, I understand the term is used in La.R.S. 45:123 in the usual and ordinary acceptation of the word—that is, customer means someone who has customarily given his trade or business to a particular seller or bargainer. In the context of the laws under consideration a customer is a consumer for whom the public utility has made outlays and constructed facilities to furnish the commodity or render the service. Preventing a duplication of these outlays and the consequent waste is the reason why the law prohibits the taking of one utility's customers by another utility. Distribution cooperatives under this definition are unmistakably "customers" of the investor-owned utilities, who cannot be taken unless the rates are un-

reasonable or the service is inadequate. These facts have not been fully explored by the Commission in the partial hearings held heretofore, although the partial evidence in the record would sustain a finding that not all of the electric energy purchased by the distribution cooperatives is resold. Significant amounts are consumed by the distribution cooperatives themselves, who thus become ultimate consumers and "customers" under the definition proposed by Louisiana Electric Cooperative, Inc.

The cooperative has not stressed the authority of our recent case of Central Louisiana Electric Co. v. Louisiana Public Service Commission, 251 La. 523, 205 So.2d 389 (1968) relied upon by the majority as a basis for its decision. Primarily, that decision is based upon the proposition that Article VI, Section 4, of the Constitution by referring to "other public utilities" and utilities "which may hereafter be made subject to supervision" by the legislature contemplated that the legislature had authority to later remove utilities from Commission regulation as it did when it enacted La.R.S. 12:326 and La.R.S. 45:1161(1) exempting cooperative electric utilities from Commission regulation. What the decision fails to comprehend is that the language of the constitution authorizing the legislature to place "other utilities" under Commission jurisdiction refers to utilities other than those enumerated therein, such as telegraph, gas,

electric light, heat and power. In other words, as the opinion demonstrates by the citation of several cases, the legislature was authorized to add to the list of utilities subject to regulation, and the jurisdiction of the Commission was not all inclusive. Talbot v. Louisiana Highway Commission, et al, 159 La. 909, 106 So. 377 (and its companion case, Louisiana Public Service Commission v. Louisiana Highway Commission, et al, 159 La. 932, 106 So. 385) and the other cases cited. But all of the cases dealt with situations where the utilities added were utilities not mentioned in Article VI, Section 4, of the Constitution. Nowhere, in any cases before Louisiana Power and Light Company v. Louisiana Public Service Commission, supra, and Central Louisiana Electric Company v. Louisiana Public Service Commission, supra, did the legislature try to reduce the Commission's jurisdiction over one of the utilities mentioned in Article VI, Section 4, as the legislature did when it exempted electric cooperative utilities from Commission jurisdiction. In summary, the constitution permits the authority of the Commission to be augmented but it does not permit the legislature to reduce the commission's power. Any attempt to remove electric public utilities from Commission jurisdiction would undoubtedly be an attempt by the legislature to minimize the scope of Commission jurisdiction and power. In the second place, when the constitution refers to the right of the legis-

lature to place other public utilities under the control of the Commission, any objective reading of the section compels the conclusion that what was meant were public utilities furnishing other commodities or rendering other services than those specified in the section. Those specified being: "All common carrier railroads, street railroads, inter-urban railroads, steamboats and other water craft, sleeping car, express, telephone, telegraph, gas, electric light, heat and power, water works, common carrier pipe lines, canals, (except irrigation canals)." The section had no reference to the mode of the utilities' organization. It was the commodity furnished or service rendered which was affected with a public interest which concerned the framers of the constitution, without regard to whether it was an individual, a cooperative, a corporation, a partnership, or an association.

Nor are we impressed with the contention that the Commission has no jurisdiction over cooperatives because it has never exercised jurisdiction over cooperatives. This contention disregards the fact that the activity of the Commission has never been coextensive with its power or authority. Many reasons could be assigned for this inactivity. The Commission may not have had the personnel or means to assume jurisdiction in a particular area or field; the utility left unregulated may not have required regulation as in the case of cooperatives who have not been in collision with

other utilities until now. Whatever these reasons may be, the constitution does not permit the commission to abrogate jurisdiction conferred in the constitution and time does not change the mandate.

My view, therefore, is that the case at bar is erroneous and that *Louisiana Power & Light Company v. Louisiana Public Service Commission, supra,* and *Central Louisiana Electric Company v. Louisiana Public Service Commission, supra,* should be overruled.

Rehearing denied.

HAMLIN and SUMMERS, JJ., are of the opinion a rehearing should be granted.